In re GRAND JURY PROCEEDINGS, SPECIAL GRAND JURY 89–2 (Rocky Flats Grand Jury).

Civ. A. No. 92–Y–180.

United States District Court, D. Colorado.

Dec. 3, 1992.

As Clarified Jan. 29, 1993.

Nancy Spencer, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for U.S.

Thomas R. Thibodeau, Duluth, MN, for defendants and third-party plaintiffs.

Robert E. Cattanach, St. Paul, MN, for third-party defendants.

Joel Mosher, Shughart, Thomson & Kilroy, Kansas City, MO, Garrett E. Mulrooney, Maun & Simon, St. Paul, MN, for Mobil Corp.

## ORDER REGARDING MOTION FOR RELEASE OF GRAND JURY DOCUMENTS

SHERMAN G. FINESILVER, Chief Judge.

This matter comes before the Court on petitioners' Motion for Release of Grand Jury Documents relating to a special grand jury inquiry at Rocky Flats Nuclear Weapons Plant. The original petitioner is the Denver Publishing Company, doing business as *The Rocky Mountain News* ("The *News* "). The *News* was joined in its motion by Combined Communications Corporation, doing business as KUSA–TV, Inc. ("KUSA"). Rockwell International Corporation ("Rockwell"), the United States of America, and John Does 1 and 2 all filed responses in opposition to the motion. Jurisdiction is based upon 28 U.S.C.A. § 1331.

The questions presented include (1) whether a court may release to the public a special grand jury report that, among other things, identifies individuals and makes allegations lacking in a preponderance of the evidence; (2) whether a court has authority to publicly release special grand jury documents such as indictments not signed by a U.S. Attorney or instruments designated as presentments; and (3) whether the Court may publicly release ministerial and non-ministerial special grand jury materials to entities having no connection to the work of the special grand jury.

*Summary*

■ Grand jury proceedings are confidential and matters occurring before the grand jury are presumed to be secret. Federal law provides that a knowing violation of this rule of secrecy may be punished as a contempt of court. The only exceptions to the strict rule of secrecy are provided for by statute and applicable judicial standards. For example, in order for a report of a special grand jury's proceedings to be submitted to a court and released to the public in compliance with federal statutes, it must concern organized criminal activity, find support in a preponderance of the evidence, and cannot accuse by name an identified individual. In order for a report to be released to the public under applicable common law standards, it must not accuse individuals identifiable by name or position; deal in rumor and conjecture; engage in social or legal argument; deal with political and social issues outside the special grand jury's duty of unearthing crime; or follow a serious breach of grand juror secrecy. In this Order, the Court holds that a special grand jury report failing these criteria may not be released to the public. The Court also holds that unsigned indictments have no legal force or validity as indictments, that presentments are obsolete in the federal system, and that for many of the same reasons that a report may not be issued, the documents purported to be indictments or presentments also may not be released to the public. Finally, the Court notes that it is unable to release a document that was never presented to it

by the special grand jury, namely, the unofficial document disseminated in October 1992.

The Court further stresses that grand jury secrecy is crucial to the continued vitality of our criminal justice system, and the grand juror's oath is integral to the continued integrity of the grand jury system. The grand jury is an institution greater than any individual matter before it. A breach of a grand juror's oath threatens to undermine the effectiveness and purpose of the grand jury and can be neither countenanced nor rewarded. In fact, courts have imposed sanctions for contempt for violations of grand jury secrecy. Therefore, the surreptitious and unlawful dissemination of matters occurring before the grand jury will militate further against the release of an otherwise inappropriate grand jury report.

The Court emphasizes that a breach of secrecy allowed to stand without refutation or judicial comment sets a troublesome precedent that affects other grand and general, or petit, juries. Such a precedent would give license to future grand juries to deviate from or disregard established laws and procedures, to willfully breach the confidentiality of the grand jury, and to make public comment on matters occurring before it which were received as an incident of jury service. No matter how noble the purpose, extralegal disclosures of information and breaches of grand jury secrecy cannot be allowed to stand uncontested by a court of law.

The Court's inability to release the Report is unfortunate. The Grand Jury held in its hands a unique opportunity to enlighten a community entitled to know of the successes and failures of its government, in this case, the operation of Rocky Flats. Accordingly, we must be clear on this point: it was possible for the special grand jury to draft an acceptable report, a report which the Court could, in good conscience, release to public view. It is with great regret that the Court has watched the Special Grand Jury fall short of the objectives of its empaneling.

While the Court will not release the special grand jury report in its entirety, nor allow release of the names or other identifying characteristics of individuals, the Court recognizes that there may be some portions of the report that may heighten awareness of the activities at Rocky Flats and address certain of the community's safety, health, and environmental concerns. The Court therefore directs the Government to submit for *in camera* inspection a proposed redacted or excised version of the report that, if possible, could lawfully be released to the public. The Court, merely by issuing such an order, does not commit itself to a release of any proposed redacted or excised version of the report; any and all documents subject to release must still comply with the statutory and common law guidelines discussed in detail below. The Court also holds that certain of the special grand jury's ministerial documents, or the contents thereof, may be released.

The Court is convinced that the activities and operations at Rocky Flats require further exploration. The Court will continue to pursue appropriate avenues to illuminate for the public the activities at Rocky Flats and their impact on the health, safety, and environment of the community; those avenues include investigation and oversight by the state and federal governments, both of which have a critical responsibility and concurrent jurisdiction in this matter of great public concern. In the interim, the Court notes that the focus on both the document released in October 1992 and the matters surrounding the report has overshadowed other, more authentic and authoritative documents that reveal much about the activities at Rocky Flats and that are currently open to public view.

## I. Background

Special grand jury 89–2 (also "the Special Grand Jury" or "the Grand Jury") was empaneled on August 1, 1989, to investigate possible federal environmental crimes that may have occurred at the Rocky Flats Nuclear Weapons Plant in Jefferson County, Colorado ("Rocky Flats"). After a three-year investigation, the United States Attorney for the District of Colorado con-

cluded that there was sufficient evidence to warrant bringing criminal charges against Rockwell, the corporate operator of Rocky Flats. However, the U.S. Attorney also concluded that indictments against certain individuals who had been employed at Rocky Flats by Rockwell and the Department of Energy ("DOE") would not be legally supportable. On March 24, 1992, the Special Grand Jury, upon being discharged, submitted to the Court proposed indictments, which purported to charge both Rockwell and former or current Rockwell and DOE employees with crimes, and documents designated as presentments. The U.S. Attorney declined to sign the proposed indictments. The Special Grand Jury also submitted a report of its findings ("the Report"). On March 26, 1992, Rockwell and the U.S. Department of Justice entered into a plea agreement whereby Rockwell pled guilty to ten criminal charges involving violations of federal environmental laws related to operations at Rocky Flats.

From March 1992, the time of Rockwell's guilty plea and the Court's receipt of the Report, until September 1992, the Court reviewed many documents, minutes, records, and confidential materials related to the Special Grand Jury and spent considerable time analyzing in detail the recitals in the report of the Special Grand Jury. On September 25, 1992, following a determination that the Report did not satisfy the statutory requirements for public issuance of a grand jury report, this Court entered an Order prohibiting the Report from being filed as a public record. It appears likely that over the course of the following several weeks unidentified members of the Special Grand Jury engaged in contact with

non-jury members regarding their work on the Grand Jury and matters occurring before it. We assume the foregoing without deciding that it was the case. In late September or October, non-jury members apparently came into possession of a document purported to be a grand jury report on Rocky Flats dated January 24, 1992 ("the January document"). Reply of Denver Publ. Co., Exhibit B. The document included excerpts of matters relating to Rocky Flats as well as observations and recommendations attributed to the members of the Special Grand Jury. The document is described in further detail in Part III, *infra*.

On October 1, 1992, The *News*, joined by KUSA, moved for public disclosure of the Report, documents styled as "indictments," documents styled as "presentments," and other ministerial documents of the Special Grand Jury.[1]

## II. The Grand Jury's Duties and Oath

On August 1, 1989, in keeping with the long and venerable history of the grand jury, this Court charged Special Grand Jury 89-2 with, among others, the following solemn duties and responsibilities:

> ... [E]ach juror is directed to report immediately to the Court any attempt by any person who, under any pretense whatsoever, addresses such juror for the purpose of or with the intent to gain any information of any kind concerning the proceedings of the grand jury, or to influence a juror in any manner or for any purpose.
>
> . . . .
>
> ... [Y]ou are free to exercise your own judgment without fear or favor and

---

1. Initially, we question whether the petitioners have standing, as members of the public, to seek access to the records of the grand jury. We assume, without deciding, that they do for the limited purpose of this proceeding. However, there are persuasive arguments to the contrary and we find inapposite the cases cited by petitioners for the proposition that the "standing of the public and the news media to seek access to sealed *court documents* has long been established." (emphasis added). The cases cited by petitioners allow standing to seek access to *trial* documents, *United States v. Gurney*, 558 F.2d 1202, 1206 (5th Cir.1977), *cert. denied sub nom.*

*Miami Herald Publishing Co. v. Krentzman*, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978), to *ministerial* records, *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778 (9th Cir.1982) ("as members of the public, [unindicted subjects of a grand jury investigation] have a right, *subject to the rule of grand jury secrecy*, of access to the *ministerial* records in the files of the district court") (emphases added), or for challenges to the scope of a secrecy order which may cover matters independently discoverable, *In re Subpoena to Testify Before Grand Jury*, 864 F.2d 1559, 1561 (11th Cir.1989).

shall not be deterred or influenced by the criticism of the public ... You are the defenders of the innocent as well as the accusers of the guilty, and in both respects you vindicate the integrity of the law ... *Your proceedings are secret and must remain secret permanently* unless and until the Court determines that the proceedings or a portion of them should be revealed in the interests of justice.

....

... [I]f the testimony of a witness is disclosed, he may be subjected to intimidation, retaliation, or other tampering before he testifies at trial. Further, the secrecy requirement protects an innocent person who may have come under investigation but who has been cleared by the action of the grand jury ... *Thus, great injury and injustice can be done to the good name and standing of a person, even though he is not indicted, should it become known that there had ever been a question of his guilt or innocence of a crime considered by the grand jury.* Because that person will not go to trial, he will have no opportunity to clear his name in the event of such an unfortunate disclosure.

....

You must be careful to preserve the secrecy of your proceedings by abstaining from communicating with your families, friends, representatives of the news media or any other persons concerning that which transpires in the grand jury room. Grand jurors may discuss these matters only among themselves and only in the grand jury room ... The content of your deliberations and the vote of any juror may not, however, be disclosed even to the government attorneys.

The performance of jury service is the discharge of one of the responsibilities of citizenship. You have taken a very comprehensive oath as grand jurors. It is an oath that is rooted in history. Thousands of your forebears have taken that oath in years past. Their adherence to it has preserved for us to this time a system of law and a sense of justice. You are now the new link in this chain, and

you must be strong and faithful in the discharge of your office.

(emphasis added).

Special Grand Jury 89–2 was also given instructions on the law of grand jury secrecy and was given a copy of the grand jury secrecy statute, Rule 6 of the Federal Rules of Criminal Procedure, which informed the grand jury that the matters occurring before it were not to be disclosed and that a knowing violation of the Rule may be punished as a contempt of court. The Rule also informed the Special Grand Jury that no disclosure of matters occurring before the grand jury may be made except (1) when so directed by a court preliminarily to or in connection with a judicial proceeding; (2) when permitted by a court at the request of a defendant; (3) by the attorney of the Government to another federal grand jury; and (4) when permitted by a court at the request of an attorney for the Government to a state or local official for the purpose of enforcing the law.

Prior to the Court's charge to the Special Grand Jury, the members of the Special Grand Jury took an oath of strict confidentiality and fairness:

You, as a member of this grand jury, do solemnly swear, that you will diligently inquire into and true presentment make, of all public offenses against the United States, committed or triable within this district of which you shall have or can obtain legal evidence.

You will keep your own counsel and that of your fellows, and of the United States, and will not, except when required in the due course of judicial proceedings, disclose the testimony of any witness examined before you, nor anything which you or any other grand juror may have said, nor the manner in which you or any other grand juror may have voted on any matter before you.

You shall present no person through malice, hatred or ill will, nor leave any unpresented through fear, favor or affection, or for any reward or the promise or hope thereof; but in all your presentments or indictments, you shall present

the truth, the whole truth and nothing but the truth, according to the best of your skill and understanding.

So Help You God.

■ The oath of the grand juror, then, is a serious matter. It is a sacrosanct promise that allows of no exceptions even when a grand jury disagrees with a prosecutor or a court of law. Indeed, this Court gave the members of Special Grand Jury 89-2 the following instruction: "As a grand jury, you are not to be concerned with the wisdom of the criminal laws enacted by Congress ... We are a government of laws and not of persons."

■ When individuals take an oath of confidentiality, it stands without citation to authority that there is no justification in public policy for a breach of that oath. The oath is one of the fundamental underpinnings of our society's justice system; our system works because oaths are taken and kept by prosecutors, judges, witnesses, attorneys, petit jurors, and, finally, by grand jurors. "No country can subsist a twelvemonth where an oath is not thought binding, for the want of it must necessarily dissolve society." *Omychund v. Barker,* 1 Atk. 21, 34 (Ch. 1744) (statement of Solicitor General Murray), *quoted in* MEMORABLE LEGAL QUOTATIONS 482 (Eugene C. Gerhart, ed. 1969). The integrity of the grand jury system, an institution in existence since 1166,[2] rests upon faithful discharge of the oath to remain silent and fair. An oath broken by accusation is a mockery of equanimity made concrete. It is a passing of judgment all too regrettably not avoidable in the conversation of private society. A court of law, however, is the sole means of protecting individual privacy from the airing of private judgment unguided by standards of due process. Where state power has created an investigative body of citizens, enabling private judgment to inform itself and to cloak itself in the accoutrements of legitimacy, it is state power that must step in to police its

creation. Congress has embodied its agreement with these principles in law, and it is such laws that allow us to live in a structured society, in a government of laws and not individuals.

■ We should emphasize that a breach of secrecy allowed to stand without refutation or judicial comment sets a troublesome precedent that affects other grand and petit juries. Such a precedent would give license to future grand juries to deviate from or disregard established laws and procedures, to willfully breach the confidentiality of the grand jury, and to make public comment on matters occurring before it which were received as an incident of jury service. No matter how noble the purpose, extralegal disclosures of information and breaches of grand jury secrecy cannot be allowed to stand uncontested by a court of law.

### III. Special Circumstances Surrounding Special Grand Jury 89-2

There are a number of important facts which all interested parties have either failed to address or have overlooked. We observe initially that it is apparent that non-jury members came into possession of a document purported to be the official special grand jury report on Rocky Flats (the January document). The document is dated January 24, 1992, and was publicly disseminated in October 1992. *See* Reply of Denver Publ. Co., Exhibit B. The document heading bears the following words:

Colorado Federal District Court

Report of the Special Grand Jury 89-2

January 24, 1992

CONFIDENTIAL DOCUMENT—NOT FOR PUBLIC DISCLOSURE.

The document includes excerpts of matters relating to Rocky Flats as well as observations and recommendations attributed to the members of the Special Grand Jury. Significantly, the Court never re-

---

**2.** The English grand jury is usually traced by historians back to the Assize of Clarendon issued by Henry II in 1166. *United States v. Cox,* 342 F.2d 167, 186 n. 5 (5th Cir.1965) (Wisdom, J., concurring) (citing Stephen, A HISTORY OF THE CRIMINAL LAW OF ENGLAND 185–86 (1883); 1 Holdsworth, HISTORY OF ENGLISH LAWS 312–23 (1956); 2 Pollock and Maitland, HISTORY OF ENGLISH LAW BEFORE THE TIME OF EDWARD I 642–47 (1959); Plucknett, HISTORY OF THE COMMON LAW 111–20 (1956)).

ceived the January document from the Special Grand Jury. The document was nevertheless purported to be authentic and was given considerable play as such in its dissemination to the public. The document serves as the basis for petitioners' request in this proceeding. On the other hand, the report that the Special Grand Jury *formally* submitted to this Court has never, in fact, been in the public domain.

If the January document originated from the grand jurors at all, then it was circulated in violation of law. Even if it were in the Court's possession, it would have absolutely no legitimacy as a court document worthy of public record. It could just as well have emanated from *any* private citizen, not necessarily a member of the special grand jury, and it cannot be doubted that the private letters of private citizens cannot be given the force of law. We must emphasize the danger of publicly airing accusations unguided by legal norms. For example, the law frowns on unofficial documents being represented as court documents. Indeed, the Colorado General Assembly has actually provided sanctions for second degree forgery on a person who "utters a written instrument which purports to be, or which is calculated to become or to represent if completed ... a public record or an instrument filed or required by law to be filed or legally fileable in or with a public office or public servant ..." C.R.S. § 18–5–103(1)(b) (1986). We do not allow even government prosecutors to accuse and invade the privacy of citizens without probable cause, and we certainly cannot, without a descent into anarchy, apply a different standard to every group of citizens who would be prosecutor, judge, and jury.

The Court is also obliged to point out at this time that it had great faith in the work of Special Grand Jury 89–2. The Court explained to the Special Grand Jury the detailed requirements of how to submit a report for public view. The Grand Jury held in its hands a unique opportunity to enlighten a community entitled to know of the successes and failures of its government, in this case, the operation of Rocky Flats.[3] Accordingly, we must be clear on this point: it was possible for the special grand jury to draft an acceptable report, a report which the Court could, in good conscience, release to public view. It is with great regret that the Court has watched the Special Grand Jury fall short of the objectives of its empaneling. The Grand Jury submitted documents that failed the legal requirements for release. It also appears that members of the Grand Jury commented in a public forum on matters occurring before the Grand Jury and released an accusatory document that never passed before the eyes of a court of law.

## IV. Grand Jury Reports Under Statute

▮ By statute, matters occurring before a grand jury are secret. However, when the requisites for disclosure are strictly adhered to, a report by a special grand jury may be submitted to a court and even released to the public. The Court's discretion in releasing special grand jury reports[4] is governed by (1) 18

---

**3.** The Court also explained to the Special Grand Jury:

In the furtherance of the discharge of its duty, the special grand jury—with the concurrence of the majority of its members—may submit a report to the Court concerning noncriminal misconduct, malfeasance, or misfeasance in office involving organized criminal activity by an appointed public officer or employee as the basis for a recommendation of removal or disciplinary act. 18 U.S.C.A. § 3331, *et seq. Thus, through the vehicle of this special grand jury, the public may be assisted in learning of the facts as they relate to Rocky Flats.*

In addition, the Special Grand Jury was given a copy of 18 U.S.C.A. § 3331, *et seq.* for reference during its term.

**4.** Because the document alleged to be in the nature of an "indictment" was not signed by the U.S. Attorney, it falls under the same analysis as any grand jury report. The "presentment" requested by petitioner KUSA, as explained *infra,* is simply another term for a report issued by a grand jury, and as such, it too will be considered within the same analytical framework as a grand jury report. For ease of reference, only the Report will be discussed in this Order; any documents alleged to be an indictment or presentment are subject to the same analysis and disposition.

U.S.C.A. § 3333 and (2) common law principles in conjunction with Fed.R.Crim.P. 6.

## A. Submission to the Court

■ Special Grand Jury 89–2 was informed that under section 3333(a), the statute by which the Grand Jury was empaneled, a special grand jury may submit a report to the presiding court if the report meets certain criteria. However, we see no authority in section 3333(a) for submission of the report by Special Grand Jury 89–2. The statute states that:

(a) A special grand jury impaneled by any district court, with the concurrence of a majority of its members, may, upon completion of its original term, or each extension thereof, submit to the court a report—

(1) concerning noncriminal misconduct, malfeasance, or misfeasance in office involving organized criminal activity by an appointed public officer or employee as the basis for a recommendation of removal or disciplinary action; or

(2) regarding organized crime in the district.

The statute clearly places significant limitations on a grand jury's authority to submit a report to the Court, and the Report of Special Grand Jury 89–2 does not fit under any of its provisions. First, the Report not only fails to detail noncriminal activities of public officials, but it incorrectly makes assertions of organized crime that are unsupportable as a matter of law and stray far afield from the special grand jury's charged and sworn task. While section 3333(a) does not define the terms "organized criminal activity" or "organized crime conditions," both the legislative history of the section and case law indicate that the terms were intended to cover ongoing criminal activity collectively undertaken, not sporadic criminal activity. *See* 116 Cong.

Rec. 35,344 (daily ed. Oct. 7, 1970) ("organized crime" includes "any criminal activity collectively undertaken") (statement of Congressman Poff); *U.S. v. Carter*, 493 F.2d 704, 708 n. 2 (2d Cir.1974) (interpreting "organized criminal activity" and citing Congressman Poff). The interpretation of the same term in the RICO statute, 18 U.S.C.A. §§ 1961 *et seq.*, and the Dangerous Special Offender Statute, 18 U.S.C.A. §§ 3361 *et seq.*, is consistent. *See, e.g., H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237–243, 109 S.Ct. 2893, 2899–2903, 106 L.Ed.2d 195 (1989); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 498, 105 S.Ct. 3275, 3285 n. 14, 3286, 87 L.Ed.2d 346 (1985); *U.S. v. Coiro*, 922 F.2d 1008, 1017 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991). The Report does not detail in a factual way any criminal activity collectively undertaken, and petitioners' arguments to the contrary are without merit.[5] One flaw in the Report is that the allegations within it are conclusory, and are therefore by definition lacking in a preponderance of the evidence. Second, and just as fatally, the Report does not purport to serve "as the basis for a recommendation of removal or disciplinary action." The Report, then, fails to meet the standard for appropriate submission to a court of law.

## B. Release to the Public

■ The power to release a report permits the special grand jury to publicize violations of the public trust where a public official's misconduct may be insufficient to establish a violation of criminal law.[6] In light of the high purpose of the grand jury report, we conclude with great regret that even if the Report were to meet the criteria for submission to the Court, the Court would nevertheless be unable to release the Report as a public record. The Special Grand Jury was explicitly instructed that a

---

**5.** Indeed, petitioners conceded in their original motion that because the grand jury's report did not involve matters relating to organized criminal activity, 18 U.S.C.A. § 3333(a) is inapplicable. Rather, petitioners contended that release of the report was governed by common law alone.

**6.** *See generally* Barry J. Stern, "Revealing Misconduct By Public Officials Through Grand Jury Reports," 136 U.Penn.L.R. 73, 138 (1987).

court can only disclose the report of a special grand jury to the public, pursuant to 18 U.S.C.A. § 3333(b), when:

> (b) The court to which such report is submitted shall examine it and the minutes of the special grand jury and, ... shall make an order accepting and filing such report as a public record only if the court is satisfied that it complies with the provisions of subsection (a) of this section and that—
>
>> (1) the report is based upon facts revealed in the course of an investigation authorized by subsection (a) of section 3332 and is supported by a preponderance of the evidence; and
>>
>> (2) ... it is not critical of an identified person.

As this Court stated in its Order of September 25, 1992, the Report cannot properly be disclosed because it is partially based upon facts not revealed in the course of the special grand jury's investigation, and the conclusions in the Report are not supported by a preponderance of the evidence. Furthermore, the Report levels serious accusations at persons easily identified by the positions they occupy, and for that reason alone it must fail the standard enunciated by section 3333(b). Where a special grand jury report does not comply with § 3333(b), the statute directs that the court "shall make an order sealing such report, and it shall not be filed as a public record." 18 U.S.C.A. § 3333(e). We conclude that the statute provides no authority for public release of the Report.

The petitioners also claim that the common law provides the basis for disclosing the Grand Jury's materials. It is an open question whether any statutory treatment of the issuance of reports is complete in itself, or whether common law principles may be properly employed to illuminate it. An argument can be made that the Court is confined to the parameters of the federal statutes, but we need not address the question because we find that common law principles also fail to support public disclosure of the Report.

## V. Grand Jury Reports at Common Law

### A. Indictments, Presentments, and Reports

The petitioners in this case have requested the product of the Grand Jury under a variety of labels, including an indictment, a presentment, and a report. For the purpose of analysis under common law, we note that all documents sought by the petitioners are neither indictments nor presentments but, at most, *reports*. An indictment, for example, sets into motion all the machinery of criminal proceedings, namely, service of process, apprehension and arrest, bonding and processing, arraignment and detention, and a criminal trial wherein the burden of proof is that of proof beyond a reasonable doubt. While a grand jury can pursue investigations on its own, without the consent or participation of a prosecutor, *In re Report & Recommendation of June 5, 1972 Grand Jury*, 370 F.Supp. 1219 (D.D.C.1974), it cannot, absent the signature and approval of a United States Attorney, return an indictment or instigate a valid prosecution. Fed. R.Crim.P. 7(c); *accord U.S. v. Laboy*, 909 F.2d 581 (1st Cir.1990); *Gaither v. U.S.*, 413 F.2d 1061 (D.D.C.1969); *Smith v. U.S.*, 375 F.2d 243 (5th Cir.1967); *U.S. v. Wright*, 365 F.2d 135 (7th Cir.1966); *Cox*, 342 F.2d 167 (noting that "[n]ot one case in all the years between 1166 and 1965!"—from the inception of the grand jury onward—has held that a court may require a prosecutor to sign an indictment prepared by the jury) (Wisdom, J., concurring specially). Furthermore, a prosecutor's decision to sign an indictment or withhold his or her signature can be neither coerced nor reviewed by the courts. *Cox*, 342 F.2d 167; *In re Grand Jury, January, 1969*, 315 F.Supp. 662, 675 (D.Md.1970). Special Grand Jury 89–2 was explicitly apprised that, absent the signature of the U.S. Attorney, any proposed indictment was by law a nullity.

We have considered and reject petitioners' arguments that there are other means to enforce the validity or disclosure of the unsigned documents designated as indictments. First, petitioners argue that Rule 7(c) actually *requires* the U.S. Attor-

**1462**

ney to sign the indictment because the Rule states that "[the indictment] *shall* be signed by the attorney for the government." (emphasis added). Petitioners conclude that as a true indictment, the material in this matter must be released. However, far from containing "compulsory" language mandating that prosecutors sign indictments, the Rule means that in order simply to *be* an indictment, and thus open to the public, a grand jury document must first be signed by the attorney for the government. Any other conclusion would destroy the prosecutorial discretion of the executive branch and emasculate the protections embodied in Fed.R.Crim.P. 6 and 18 U.S.C.A. § 3333. The inability of a court or grand jury to override a prosecutor's decision not to prosecute is consistent with the grand jury's historic role. The grand jury has always been a *check* on prosecutorial power, not a substitute for the prosecutor.

■■■ Second, petitioners claim Rule 6(f) requires that the indictment be returned in open court. Again, whether a document should be returned in open court begs the question of whether it is an indictment. The requirement that an indictment be returned in open court is based on the premise that a true indictment officially charges an individual with a crime, and that the public has the right to know of that charge just as the accused has the right to a fair, or public, hearing. Here, however, there exists no indictment signed by both Special Grand Jury 89–2 and the United States Attorney.

■■■ Finally, petitioners suggest that the Court release to the public the so-called *indictments* drawn up by the Special Grand Jury, accompanied by responses from the Government and the individuals identified in the documents. For the rea-

sons stated consistently in statutory and common law, we are unable to honor petitioners' request. To require individuals named in unsigned indictments to respond publicly to those unsigned indictments is a procedure neither warranted nor authorized by law. This Court will not engraft special procedures onto those already existing merely in order to accommodate an unauthorized release of information, especially where those procedures threaten to do violence to due process of law.[7] In contrast to an indictment, a *presentment* is "an accusation initiated by the grand jury itself, and in effect an instruction that an indictment be drawn." *United States v. Briggs*, 514 F.2d 794, 803 n. 14 (5th Cir. 1975); *Application of United Electrical, Radio, and Machine Workers*, 111 F.Supp. 858, 863 n. 13 (S.D.N.Y.1953). The grand jury has historically possessed the right to make presentments " 'of matters of public concern unaccompanied by indictments,' " *In re Grand Jury, January, 1969*, 315 F.Supp. at 675 (quoting *In re Presentment by Camden Grand Jury*, 10 N.J. 23, 89 A.2d 416, 443–44 (1952)); *see also, In re Report & Recommendation of June 5, 1972 Grand Jury*, 370 F.Supp. at 1222. However, while presentments are provided for in the Fifth Amendment to the U.S. Constitution, their use is now considered *obsolete in the federal system, Briggs*, 514 F.2d at 803; *Gaither*, 413 F.2d at 1065 n. 1, and they are no longer included by statute as a charging document. Fed.R.Crim.P. 7, Notes of Advisory Committee on Rules, Note to Subdivision (a), Item 4; *United States v. Zavala*, 839 F.2d 523, 529 (9th Cir.1988), *cert. denied*, 488 U.S. 831, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988) (presentments are obsolete and cannot be the basis for a criminal prosecution); *United States v. Coachman*, 752 F.2d 685, 689 n. 23 (D.C.Cir.1981) (noting that "use of an ade-

---

7. Petitioners' least persuasive argument is that an indictment may be kept secret "only if necessary to secure custody of a defendant who might flee." Petitioners cite *United States v. Smaldone*, 484 F.2d 311, 320 (10th Cir.1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1973) as authority for their statement.

Our reading of *Smaldone* makes it clear that the Tenth Circuit said nothing of the sort; the language used by the Court of Appeals omitted entirely the words *only if necessary*, and without those words the Court's concern merely joins a long list of other common law factors mandating secrecy. *See, e.g., United States v. John Doe, Inc. I*, 481 U.S. 102, 109 n. 5, 107 S.Ct. 1656, 1661 n. 5, 95 L.Ed.2d 94 (1987).

quate indictment has become a constitutional imperative").[8] Presentments have become disfavored as a means of revealing official misconduct without initiating a prosecution in part because:

> [a] presentment is a foul blow. It wins the importance of a judicial document; yet it lacks its principal attributes—the right to answer and to appeal. It accuses, but furnishes no forum for denial. No one knows upon what evidence the findings are based. An indictment may be challenged—even defeated. The presentment is immune. It is like the 'hit and run' motorist. Before application can be made to suppress it, it is the subject of public gossip. The damage is done. The injury it may unjustly inflict may never be healed.

*People v. McCabe*, 148 Misc. 330, 266 N.Y.S. 363, 367 (1933).

▮▮▮▮▮ The grand jury document labelled as a 'presentment' can no longer be called, strictly speaking, a presentment. It is a *report*. The distinction between a presentment and a report is that only the latter is governed by standards which aim to soften foul blows, and grand juries may no longer issue documents failing those standards. Needless to say, if a report of a special grand jury must be based on certain standards, a presentment must also be based on those standards. We will therefore analyze both the so-called indictments and the so-called presentment under the common law rubric of a report.

### B. · Powers of the Special Grand Jury

▮▮▮▮▮ A special grand jury has the power to investigate, to indict in conjunction with the prosecutor, and, unlike a regular grand jury, to issue reports. *U.S. v. Ceccerelli*, 350 F.Supp. 475, 479 (W.D.Pa. 1972); *In re Grand Jury, January, 1969*, 315 F.Supp. at 675. Once the United States Attorney determines that insufficient evidence exists to warrant an indictment, the jury has no function but to issue an appropriate, legally sanctioned report or stand silent. Contrary to the assumptions implicit in petitioners' motion, the special grand jury's power to issue a report is confined to the power to issue the report *to the Court*. It is only then that the Court, with proper authority, may release a properly constituted report to public view.

▮▮▮▮▮ It is beyond the power of a grand jury to accuse an individual of criminal misconduct without returning a valid indictment against him. *Briggs*, 514 F.2d 794; *Application of Jordan*, 439 F.Supp. 199, 202 (S.D.W.Va.1977). "In specifically identifying an individual as an unindicted [criminal], the grand jury violates its duty to serve as protector of all those whom it investigates but chooses not to put to trial." *Jordan*, 439 F.Supp. at 202. The need for safeguards on the grand jury is enhanced by the fact that it is not bound by the rules of evidence that normally protect the publicly accused from baseless or unduly prejudicial information. The grand jury can hear any rumor, tip, hearsay, or innuendo it wishes, in secret, with no opportunity for cross-examination. *Costello v. U.S.*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The grand jury is not required to hear or consider evidence which would exonerate a target of an investigation, and the fairness of its methods is unreviewable. *U.S. v. Williams*, —— U.S. ——, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). It may even receive evidence unconstitutionally obtained. *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958).

▮▮▮▮▮ Accordingly, with the grand jury's awesome power to indict comes the responsibility to protect citizens against unfounded criminal prosecutions, *see United States v. Calandra*, 414 U.S. 338, 342, 94 S.Ct. 613, 616, 38 L.Ed.2d 561 (1973), as well as against the permanent stigma that results from a charge made public but not subject to disproof. "[A] man should not be subject to a quasi-official accusation of miscon-

---

**8.** While the Court in its initial instruction to the Grand Jury informed the Grand Jury that the Fifth Amendment granted them the power to submit a presentment, the Court later responded to an inquiry from the Grand Jury by clarifying that the modern role of the presentment is closer to that of a statutory report, rather than an indictment, and that the presentment as a charging document is obsolete.

duct which he cannot answer in an authoritative forum." *United Electrical*, 111 F.Supp. at 867. When the grand jury delivers a public and unanswerable reprimand, it defeats the very purpose of its existence. *Id.* at 868. The only means to check the terrific power of the grand jury is the rule of grand jury secrecy, as mandated by Fed. R.Crim.P. 6 and the grand jury jurisprudence.

## C. Grand Jury Secrecy

Historically, the proper functioning of the grand jury system has depended upon the secrecy of the grand jury proceedings. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979). Grand jury secrecy is "older than our Nation itself." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959). "Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye ... The rule of grand jury secrecy was imported into our federal common law and is an integral part of our criminal justice system ... Federal Rule Crim.Proc. 6(e) codifies the rule that grand jury activities generally be kept secret ..." *Douglas Oil*, 441 U.S. at 218 n. 9, 99 S.Ct. at 1672 n. 9. The rule of secrecy "is 'as important for the protection of the innocent as for the pursuit of the guilty.'" *U.S. v. Sells Engineering, Inc.*, 463 U.S. 418, 424–25, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983) (quoting *U.S. v. Johnson*, 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943)).

The Supreme Court has adopted a succinct catalogue of reasons for grand jury secrecy, including preventing the escape of those whose indictment may be contemplated; insuring the utmost freedom to the grand jury in its deliberations, and preventing persons subject to indictment or their friends from importuning the grand jurors; preventing subornation of perjury or tampering with the witness who may testify before the grand jury and later appear at the trial of those indicted by it; encouraging free and untrammeled disclosures by persons who have information with respect to the commission of crime; and protecting an innocent and exonerated accused from disclosure of the fact that he has been under investigation [9] and from the expense of standing trial where there was no probability of guilt. *John Doe, Inc. I*, 481 U.S. at 109 n. 5, 107 S.Ct. at 1661 n. 5; *In re Grand Jury Investigation*, 903 F.2d 180, 183 (3rd Cir.1990). Special Grand Jury 89–2 was informed of these principles.

In applying the reasons for secrecy to this case, it is largely irrelevant that the work of Special Grand Jury 89–2 is finished. The concern for the protection of an innocent person accused of wrongdoing applies with full force, and the encouragement of disclosure from those with information remains a concern due to the negative precedent that a release of the Grand Jury documents would set. Although the remaining rationales apply with slightly less force when a grand jury has disbanded, there is no question that the effects on future grand jury participants of a tear in the veil of secrecy would be nothing less than chilling. Potential witnesses who are

---

**9.** As we have noted, in its instructions to Special Grand Jury 89–2, the Court outlined the reasons for grand jury secrecy, including the observation that:

> investigation alone carries with it a suggestion of guilt. Thus, great injury and injustice can be done to the good name and standing of a person, even though he is not indicted, should it become known that there had ever been a question of his guilt or innocence of a crime considered by the grand jury. Because that person will not go to trial, he will have no opportunity to clear his name in the event of an unfortunate disclosure. For all these reasons, the secrecy requirement is of the utmost

> importance and must be regarded by you as practically sacred.

We reject the implication of the petitioners' *observation that "[i]t is worth noting that this statement concerns protection from disclosure of accusations made before the grand jury, not by the grand jury."* (emphases in original). The petitioners appear to be proposing an indefensible exception to the rule of grand jury secrecy: disclosure of matters *before* the grand jury is acceptable so long as that disclosure is made *by* the grand jury. The petitioners' suggestion of a principled distinction between the two methods of dissemination is entirely without merit.

aware of the probability of their statements being publicly aired are less likely to come forward, or, if already in court, to be forthright. *See Douglas Oil,* 441 U.S. at 219, 99 S.Ct. at 1672; *U.S. v. Haller,* 837 F.2d 84, 88 (2nd Cir.1988). The deliberations of future grand juries can only be impeded by the knowledge that their thoughts and accusations might be made public, subjecting them to scorn at the hands of the public and harassment or physical danger at the hands of disgruntled potential indictees. A court is bound to consider:

> not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties. Concern as to the future consequences of frank and full testimony is heightened where the witness is an employee of a company under investigation. Thus, the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.

*Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674 (citation omitted); *see also Sells Engi-*

*neering,* 463 U.S. at 432, 103 S.Ct. at 3142; *U.S. v. Proctor & Gamble Co.,* 356 U.S. 677, 681–82, 78 S.Ct. 983, 985–87, 2 L.Ed.2d 1077 (1958); *In re Lynde,* 922 F.2d 1448, 1454 (10th Cir.1991); *In re Donovan,* 801 F.2d 409, 410 (D.C.Cir.1986); *In re Biaggi,* 478 F.2d 489, 491–92 (2d Cir.1973); *Stump v. Gates,* 777 F.Supp. 796, 805 (D.Colo. 1991).

For these reasons, a court of law can neither condone nor reward extrajudicial breaches of grand jury secrecy that threaten to undermine an institution greater than any individual matter before it. The grand jury does not operate in a vacuum. To the detriment of the grand jury system, loose procedures establish unruly precedent. If grand jurors are allowed to proceed in accordance with their own rules, chaos will take the place of structured procedures that have stood the test of time.[10]

### D. Standards for Release to the Public: The Common Law and Its Statutory Codification

 Even under a liberal construction of the exceptions to the secrecy rule, only the Court has the power to release to the public a report from a special grand jury. Under Fed.R.Crim.P. 6(e)(3)(C)(i), the Court may only disclose those matters occurring before the grand jury "preliminarily to or in connection with a judicial proceeding." [11]

---

**10.** Three statutes are generally available to punish violations of Fed.R.Crim.P. 6(e)(2), the statute mandating that grand jury proceedings be kept secret: 18 U.S.C.A. § 3333(c) (providing for citations for contempt in unauthorized publications of grand jury reports), 18 U.S.C.A. § 401 (providing for citations for contempt for general violations of court rules), and 18 U.S.C.A. § 1503 (providing for prosecution for obstruction of justice). These statutes complement each other in enforcing Fed.R.Crim.P. 6(e)(2), which provides that "[a] grand juror ... shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules ... A knowing violation of Rule 6 may be punished as a contempt of court." *See, e.g., In re Summerhayes,* 70 F. 769 (N.D.Cal.1895) (holding grand juror in contempt for violating the obligation of secrecy). Other individuals listed in Rule 6 have also routinely been held in contempt for violating the rule of secrecy. *See U.S. v. Howard,* 569 F.2d 1331, 1336 (5th Cir.1978) (involving sale of grand jury transcripts); *United States v. Smith* 815 F.2d 24, 26 (6th Cir.1987)

(involving disclosure of grand jury materials to a newspaper by Drug Enforcement Administration agent).

In addition to citations for contempt, Courts have held that a prosecution for obstruction of justice under 18 U.S.C.A. § 1503 is appropriate when an individual has violated Rule 6 during the pendency of a proceeding. *U.S. v. Howard,* 569 F.2d 1331, 1336 (5th Cir.1978). For example, in *U.S. v. Peasley,* 741 F.Supp. 18, 20 (D.Me. 1990), the Court held that, in addition to Rule 6, section 1503 applied to a grand juror who had informed the target of the grand jury's proceedings.

**11.** Even here, there is no indication that Rule 6(e) contemplates disclosure to the public. While Rule 6 allows disclosure by the Court or by U.S. Attorneys to an attorney for the government (6(e)(3)(A)(i)), to the personnel who assist them (6(e)(3)(A)(ii)), to another grand jury (6(e)(3)(C)(iii)), and to appropriate officials of a state or political subdivision (6(e)(3)(C)(iv)), no-

Furthermore, the moving party must make a strong showing of "particularized need" for grand jury material in a judicial proceeding of which it is not a part. *See U.S. v. Baggot,* 463 U.S. 476, 479–80, 103 S.Ct. 3164, 3166–67, 77 L.Ed.2d 785 (1983); *Sells Engineering,* 463 U.S. at 434, 443–44, 103 S.Ct. at 3143, 3148–49; *Illinois v. Abbott,* 460 U.S. 557, 566–67, 103 S.Ct. 1356, 1360–61, 75 L.Ed.2d 281 (1983); *Douglas Oil,* 441 U.S. at 218–19, 222–23, 99 S.Ct. at 1672–73, 1674–75; *Lynde,* 922 F.2d at 1454; *U.S. v. Rising,* 867 F.2d 1255, 1260 (10th Cir.1989); *U.S. v. Warren,* 747 F.2d 1339, 1347 (10th Cir.1984). However, the *News* and KUSA admit that they have no connection either to the grand jury's investigation or to any judicial proceedings which may conceivably have resulted from it; therefore, the petitioners' motion is neither preliminary to nor does it have any connection with a judicial proceeding. In addition, the petitioners have failed to make any showing whatsoever of particularized need.

■ Regardless of whether issuance of a report is justified under Rule 6(e), however, the Rule must be considered along with a coordinate source of authority for a court's issuance of a grand jury report, the common law. *See In re Report and Recommendation of June 5, 1972 Grand Jury,* 370 F.Supp. at 1229 (noting that Rule 6(e) was not intended to create new law but remains subject to the law and traditional policies that gave it birth). A court's decision of whether to disclose a grand jury report to the public is typically *governed by* a balancing of a number of factors at common law. Several courts have enumerated the following factors:

(1) whether the report describes general community conditions or whether it refers to identifiable individuals;

(2) whether the individuals are mentioned in public or private capacities;

(3) the public interest in the contents of the report balanced against the harm to the individuals named;

(4) the availability and efficacy of remedies; and

where does it provide for disclosure to the *pub-*

(5) whether the conduct described is indictable.

*In re Report of Grand Jury Proceedings Filed on June 15, 1972,* 479 F.2d 458, 460 (5th Cir.1973); *In re Grand Jury Sitting in Cedar Rapids, Iowa,* 734 F.Supp. 875, 876 (N.D.Iowa 1990).

■ The Report refers to identifiable individuals in their public capacities. There are no remedies available to the named individuals in the event of disclosure, and the conduct described is not indictable. These factors point toward nondisclosure. The keystone of the analysis, however, is the third factor, balancing the harm to any individuals named in the report against the public interest in disclosure. *See Cedar Rapids,* 734 F.Supp. at 877. The *Cedar Rapids* Court found that the report in that case would, if released, impose significant potential harm upon the named individuals without leaving them a meaningful remedy. It therefore redacted the names of the individuals cited therein, finding that their interest in not having their names published outweighed the public's interest in knowing the identity of the individuals. We agree with the emphasis on the factor balancing private harm versus public interest. Inasmuch as the key consideration is the prevention of harm to named individuals who have not been, outside of the legally inadequate Report, accused of anything, the great potential of harm to those individuals named in the Report persuades the Court against disclosure.

Another persuasive standard for release of grand jury reports was articulated by the District Court for the District of Columbia in *In re Report & Recommendation of June 5, 1972 Grand Jury,* 370 F.Supp. at 1226. The District Court stated that a grand jury could issue a report that drew no accusatory conclusions, deprived no one of an official forum in which to respond, was not a substitute for an indictment, contained no advice or recommendations that infringed on the prerogatives of other branches of government, and made

*lic.*

no moral or social judgments.[12] *Accord, Hammond v. Brown*, 323 F.Supp. 326 (N.D.Ohio), *aff'd*, 450 F.2d 480 (6th Cir. 1981) (grand jury lacks authority to issue reports which advise, condemn, recommend, or engage in moral and social comment); *United Electrical*, 111 F.Supp. at 867 (grand jury may not, under guise of presentment, render advisory opinions, nor simply accuse, compelling accused to stand mute). The report by the Special Grand Jury fails nearly all these criteria. The Report accuses individuals readily identifiable by their positions, deals in rumor and conjecture, passes judgment, engages in social and even legal argument, and, notably, deals with many political and social issues having nothing to do with the Special Grand Jury's duty of investigating environmental crime.

Moreover, what the District Court in *In re Report & Recommendation of June 5, 1972 Grand Jury* ultimately held was that a grand jury report dealing with matters discovered by the Watergate grand jury could properly be issued to a congressional committee for the public purpose of impeaching the President of the United States. The Court was not presented with the issue of disclosure to the public, but to Congress, and the Court stressed that "[i]t would be difficult to conceive of a more compelling need" than enabling the nation's highest legislative body to conduct an impeachment of the President of the United States. *Id.* at 1230. The facts at bar are easily distinguishable.

We therefore conclude that while the Special Grand Jury possessed the authority to submit an appropriate report to this Court, the Report it chose to submit does not sufficiently abide by the legal system's protection of the innocent and the necessity of disengagement from unsupportable innuendo to warrant public disclosure. We have considered the petitioners' arguments to the contrary and do not find them persuasive.

Particularly worth comment is *In re Charlotte Observer*, 921 F.2d 47, 50 (4th Cir.1990). The issue presented was whether two reporters could publish the name of a person identified in open court as the target of a grand jury investigation. The primary consideration underlying the Court's finding that the name could be disclosed was the courts' traditional hostility toward prior restraint; the Court did not believe that it could restrain reporters from publishing information that they had *already lawfully obtained*. Clearly, prior restraint is not an issue in the instant matter. No one is prohibiting the media from publishing what information they have. Indeed, the media have already done so. Rather, the issue is whether the newspapers should have access to all of the original records and confidential deliberations of a special grand jury.

 *Charlotte Observer* can also be distinguished by the manner of the premature disclosure: in *Charlotte Observer*, the information was lawfully obtained in open court. In the case at bar, the improprieties in the surreptitious release of matters before the Grand Jury militate against its official public release. It appears that members of Special Grand Jury 89–2 engaged in extrajudicial activities after their dismissal, in violation of their sworn oath, that cannot be lightly condoned. Furthermore, the rules regarding grand jury secrecy are not waived merely because some public disclosure occurs. *Barry v. U.S.*, 740 F.Supp. 888, 891 (D.D.C.1991); *see also U.S. v. Corbitt*, 879 F.2d 224, 234 n. 13 (7th Cir.1989). To the extent that the petitioners now appear to be requesting this Court to lend its imprimatur of legitimacy to the actions of unidentified individuals and the unfortunate dissemination of unofficial information in a public forum, we must respectfully decline.

## VI. Other Means of Informing the Public

The facts surrounding Rocky Flats and the Special Grand Jury are as subject to

---

**12.** In its August 1989 charge to the Grand Jury, this Court observed:

Fundamental fairness prompts that the entire matter be submitted to a special grand jury so that the various facets dealing with Rocky Flats may be presented in an orderly manner with an absence of emotional or political considerations.

great confusion as they are to compelling public interest. While the Court will not release the Report in its entirety, and will not allow release of either the so-called indictments and presentments or the names of individuals, it may be that portions of the Report may legitimately be disclosed in order to enlighten the community on matters dealing with health, safety, and environmental concerns. To that end, the Court directs the Government to submit for *in camera* inspection a proposed redacted or excised version of the Report that, if possible, could lawfully be released to the public. The Government should explain its objections, if any, paragraph by paragraph, to each matter it suggests cannot be properly disclosed. The Government is also free to submit *in camera* a proposed response to each section of the Report that the Government suggests may be publicly disclosed. In this way any statement not redacted would be accompanied by the Government's response to the statement, both to be publicly disclosed.

We emphasize that the Court, merely by issuing such an order, does not commit itself to a release of any proposed redacted or excised version of the Report; any redacted Report subject to release must still comply with the statutory and common law guidelines discussed in detail above. It is also conceivable that no meaningful document will survive the extensive excision necessary to cure the flaws of the Report. Indeed, once the Report is shorn of its objectionable aspects, it may provide some of the same information as that which is already available in the public record, but has largely been ignored.

Examples of information in the public record include the Government's Supplemental Sentencing Memorandum, filed May 28, 1992, and transcripts of the Sentencing Hearing on June 1, 1992. In both the Sentencing Memorandum and Hearing, Assistant United States Attorney Kenneth Fimberg and Department of Justice attorney Peter Murtha explained on behalf of the Government that the violations of Rockwell did not result in substantial physiological harm or imminent threat of such harm, and that the $18.5 million fine was nearly four times as big as any hazardous waste fine in U.S. history. The Government explained that the reasons behind its decision not to indict and prosecute Rockwell were based on the uncertainty of prevailing on several ambiguous legal issues and the undesirability of litigating the case for five or more years, only to have the taxpayers, through the Department of Energy, ultimately bear the cost for attorneys' fees and fines.

Both the Government and Rockwell, in their sentencing memoranda, provided scathing, well-documented critiques of the Department of Energy. The Government concluded that the DOE "was hostile to environmental regulation," that it was "a poor steward of the nation's environment," and that it fostered a culture giving environmental compliance low priority. The Government stated that while the DOE possessed sovereign immunity from suits against it, publicity of its involvement in Rockwell's crimes would help make both government officials and the public aware of its environmental failures during the 1980s. Rockwell, for its part, provided much support for its contention that the Department of Energy "made its priorities absolutely plain: *the production of nuclear weapons came first."*

The Government also listed in detail the ten criminal counts with which Rockwell was charged; Rockwell, on the other hand, alleged numerous defenses, including operational and budgetary control by the DOE. The Government strongly disputed Rockwell's defenses, stating that Rockwell had almost total day-to-day control over the Rocky Flats weapons facility, and that Rockwell had almost complete discretion in its expenditure of budgets provided by the DOE and U.S. taxpayers. The Government also criticized Rockwell's attempts to explain away its criminal violations, its conscious neglect of environmental compliance because it was "not cost effective," and its claim that the DOE praised Rockwell's "exemplary" conduct when the DOE also stated that Rockwell's permit applications were "grossly deficient" and some of its waste facilities "patently illegal." The foregoing

is but a fraction of the publicly available information on Rocky Flats that has seen little public exposure.

Nevertheless, this Court, as the court instrumental in the empaneling of Special Grand Jury 89–2, is convinced that the activities and operations at Rocky Flats require further exploration. The Court will continue to pursue appropriate means to illuminate for the public those activities and their impact on the health, safety, and environment of the community, including investigation and oversight by the state and federal governments, both of which have a critical responsibility and concurrent jurisdiction in this matter of great public concern.

## VII. Disclosure of the Ministerial Records of the Grand Jury

The petitioners also request access to the ministerial records of the special grand jury, including the following materials:

(1) any order authorizing summons of the special grand jury;

(2) any order authorizing extension of the special grand jury;

(3) any written authority permitting prosecutors to present evidence to the special grand jury;

(4) voting records, relating to any decision to extend the life of the special grand jury;

(5) records setting forth the method by which the special grand jury was empaneled;

(6) all records of disclosure of names of persons receiving information about matters occurring before the grand jury, as defined in F.R.Crim.P. 6(e)(3)(A)(ii);

(7) the oath of the special grand jury; and

(8) the instructions given to the grand jury.

▮▮▮ A ministerial record is one that generally relates to the procedural aspects of the empaneling and operation of the special grand jury. *In re Special Grand Jury (for Anchorage, Alaska,* 674 F.2d 778, 779 n. 1 (9th Cir.1982). In one oft-cited case addressing the issue, the Ninth Circuit held that:

> as members of the public, appellants have a right, subject to the rule of grand jury secrecy, of access to the ministerial records in the files of the district court having jurisdiction of the grand jury. Absent specific and substantial reasons for a refusal, such access should not be denied.

*Id.* at 781 (holding that unindicted subjects of grand jury investigation could seek disclosure of grand jury's ministerial records). We agree that petitioners have limited standing to seek those ministerial records of a grand jury that are not subject to grand jury secrecy.

The petitioners cite the case of *In re Grand Jury Investigation,* 903 F.2d 180 (3rd Cir.1990), in support of their claim that the Court should disclose the ministerial records of the grand jury. The Court there held that certain ministerial records, such as the commencement and termination dates of a grand jury, did not fall within the purview of Fed.R.Crim.P. 6(e) because such records reveal nothing of substance about the grand jury's investigation. An instructive standard, then, is whether disclosed information would reveal the substance or essence of the grand jury's investigation or deliberations.

▮▮▮ With the above exceptions, there is little law on this issue,[13] and disclosure is discretionary. While the reasons for disclosure of ministerial documents do not weigh so heavily in public policy as might more substantive court documents,

---

**13.** We note that the contrary cases cited by Rockwell, the United States, and John Does 1 and 2 all clearly relate to *non* ministerial matters and are therefore not on point. *See, e.g., In re Lynde,* 922 F.2d 1448 (10th Cir.1991) (denying request for grand jury transcripts); *U.S. v. Rising,* 867 F.2d 1255 (10th Cir.1989) (denying request for grand jury minutes); *U.S. v. Warren,* 747 F.2d 1339 (10th Cir.1984) (denying request for grand jury testimony); *U.S. v. Tager,* 638 F.2d 167 (10th Cir.1980) (denying request for transcript of grand jury proceedings); *U.S. v. Hughes,* 429 F.2d 1293 (10th Cir.1970) (denying request for memorandum summarizing evidence presented to grand jury).

the reasons against disclosure are also less weighty. We hold that there can be little justification to deny in its entirety petitioners' more limited and narrowly tailored request. The request for item seven, oath of the Special Grand Jury, has already been granted by its inclusion in this Order. We now grant disclosure of item one, any order authorizing summons of the Special Grand Jury, and two, any orders authorizing extension of the Special Grand Jury. The Court will also release the written instructions given to the Grand Jury upon empaneling. The requests for items three, any written authority permitting prosecutors to present evidence to the Special Grand Jury, and five, records setting forth the method by which the Special Grand Jury was empaneled, are denied as being unclear. The following requests are for documents non-ministerial in nature and accordingly are denied: items four, voting records relating to any decision to extend the life of the Special Grand Jury, and six, all records of names of persons receiving information about matters occurring before the Grand Jury.

## VIII.

Accordingly, it is ordered that:

(1) Petitioners' Motion for Release of Grand Jury Documents, filed October 2, 1992 and October 23, 1992, is GRANTED IN PART and DENIED IN PART.

(2) Petitioners' motion for disclosure of the Special Grand Jury report and any documents purporting to be an indictment or presentment is DENIED.

(3) Petitioners' motion for disclosure of ministerial matters is GRANTED IN PART.

(a) The request for the oath of the Special Grand Jury is GRANTED.

(b) The request for the written instructions to the Special Grand Jury is DENIED with the exception of the written instructions given upon empaneling.

(c) The request for any orders authorizing summons of the Special Grand Jury is GRANTED.

(d) The request for any orders authorizing extension of the Special Grand Jury is GRANTED.

(e) The request for any written authority permitting prosecutors to present evidence to the Special Grand Jury is DENIED' as being unclear.

(f) The request for records setting forth the method by which the Special Grand Jury was empaneled is DENIED as being unclear.

(g) The requests for voting records relating to any decision to extend the life of the Special Grand Jury and all records of names of persons receiving information about matters occurring before the grand jury are DENIED.

(h) Requests for any other materials or documents are DENIED.

The Clerk of the Court is DIRECTED to make available for public inspection and copying the documents to which the Court has granted access.

(4) By Monday, December 21, 1992, the Government is DIRECTED to submit for *in camera* inspection a proposed redacted or excised version of the Report that, if possible, could lawfully be released to the public. The Government should explain its objections, if any, paragraph by paragraph, to each matter it suggests cannot be properly disclosed. The Government is also free to submit *in camera* a proposed response to each section of the Report that the Government suggests may be publicly disclosed. In this way any statement not redacted would be accompanied by the Government's response to the statement, both to be publicly disclosed.