**UNITED STATES of America, Plaintiff-Appellant,**

v.

**EVANS & ASSOCIATES CONSTRUCTION CO., INC. and Lloyd I. Evans, Defendants-Appellees.**

Nos. 87–1331, 87–1332.

United States Court of Appeals, Tenth Circuit.

Feb. 17, 1988.

David Seidman, Atty., Dept. of Justice, Washington, D.C. (Charles F. Rule, Acting Asst. Atty. Gen., Kenneth G. Starling, Deputy Asst. Atty. Gen., John J. Powers, III and Laurence K. Gustafson, Attys., Dept. of Justice, Washington, D.C., Kent A. Gardiner and Alan A. Payson, Attys., Dept. of Justice, Dallas, Tex., with him on the briefs), for plaintiff-appellant.

B.J. Rothbaum, Jr. of Linn & Helms, Oklahoma City, Okl. (Brinda K. White of Linn & Helms, Oklahoma City, Okl., David Kline and Richard Coulson of Kline & Kline, Oklahoma City, Okl., with him on the brief), for defendants-appellees.

Before SEYMOUR, SETH and BALDOCK, Circuit Judges.

SETH, Circuit Judge.

SETH, Circuit Judge.

This appeal is taken from an order of the United States District Court for the Western District of Oklahoma dismissing in its entirety a three count indictment against appellees as a sanction. The indictment charged appellees with violating Section One of the Sherman Anti-Trust Act, 15 U.S.C. § 1, the mail fraud statute, 18 U.S.C. § 1341, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), in connection with the award of an Oklahoma highway construction contract. The United States as appellant contends that the trial court abused its discretion in granting appellees' motion for discovery and erred in dismissing Count One as time barred.

Evans and Associates (Evans) was a construction company. Beginning as early as September 1979 and continuing at least through April 1981 it was charged that appellees and other unnamed coconspirators agreed among themselves who would be the lowest bidder for the Noble County project the Oklahoma Department of Transportation was awarding. The contract was awarded in 1979. On April 21, 1986 a grand jury for the Western District of Oklahoma returned the indictment here concerned.

Appellees made a number of discovery motions and also moved to dismiss Count One as being barred by the five-year statute of limitations. One of the discovery motions requested that pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure the court make available transcripts of testimony presented to the grand jury. The court granted appellees' motion to dismiss Count One on the limitations issue. In addition, the court made a number of scheduling orders because it appeared that the trial would begin in about thirty-five days. The court granted appellees' Rule 6(e) motion and directed the Government to provide Evans within seven days (October 23, 1986) the grand jury transcripts that were already transcribed and all other testimony no later than ten days before the start of the trial.

Rather than turn over the transcribed material on October 23 the Government filed a motion for the court to reconsider the production order. The Government stated that it was willing to disclose the statements of all Government witnesses ten days before trial; that it would furnish all exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and that it had already provided appellees with transcripts of their own grand jury testimony and those of employees in a position to legally bind them. The court reconsidered but reaffirmed its earlier decisions. During the hearing the Government notified the court that it was going to appeal the dismissal of Count One of the indictment and also that it would not comply with the court's disclosure order. The Government requested that the court impose sanctions in order for it to have an

order to appeal. As a sanction the court dismissed the entire indictment and the Government filed this appeal.

■ The Government contends the court abused its discretion when it granted appellees' motion requesting transcripts of testimony given before the grand jury because appellees failed to demonstrate a particularized need for the material.

When the court was called upon to determine whether the grand jury transcripts should be released it had substantial discretion to order or to deny release. *Douglas Oil Company of California v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156. We said in *United States v. Warren,* 747 F.2d 1339, 1347 (10th Cir.): "There is a 'long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.'" This is necessarily the starting position. The Supreme Court had stated this policy as it observed in *Douglas Oil Company:*

> "In particular, we have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule."

441 U.S. at 218–19, 99 S.Ct. at 1672–73.

Nevertheless, there are instances where disclosure of grand jury testimony is warranted. As the Supreme Court noted in *Dennis v. United States,* 384 U.S. 855, 870,

86 S.Ct. 1840, 1849, 16 L.Ed.2d 973, as to variations to the doctrine:

> "These developments are entirely consonant with the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice."

The Federal Rules of Criminal Procedure have provided an exception to the general rule of secrecy with the courts acting as guardians of the grand jury transcripts, and not the United States Attorney. Thus, the Federal Rule of Criminal Procedure 6(e)(3)(C)(i) states:

> "(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
>
> (i) when so directed by a court preliminarily to or in connection with a judicial proceeding."

The trial court must exercise its discretion in determining whether the testimony should be disclosed. *United States v. Warren,* 747 F.2d 1339, 1347 (10th Cir.); *United States v. Cronic,* 675 F.2d 1126, 1130 (10th Cir.), *rev'd on other grounds,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657; *In re September 1975 Grand Jury Term,* 532 F.2d 734, 737 (10th Cir.); *United States v. Parker,* 469 F.2d 884, 889 (10th Cir.).

The party seeking disclosure must demonstrate that disclosure is sought preliminarily to or in connection with a "judicial proceeding," and that there is a particular, not a general, need for the material. The rule is not to be used as a substitute for general discovery. The party seeking disclosure must demonstrate that the need for disclosure outweighs the need for secrecy.

In the instant case, appellees gave these specific reasons why they needed the material: the passage of time between the events alleged, some events occurred nearly twenty years ago; the grand jury testimony was the only source of "fresh" testimony available; there would be no interference with an ongoing investigation; the complexity of the charges; the number of potential witnesses; the volume of testimony heard by the grand jury; and finally,

because the testimony would be extremely helpful to Evans in preparing its case because the testimony consisted of statements made by witnesses who testified in support of the conspiracy and much of their testimony would be uncorroborated. Assertions were also made by the Government in its motion for a continuance filed September 15, 1986 wherein it also argued the complexity of the case legally and factually, the voluminous evidence attendant to a 13–year course of conduct, and that it anticipated calling fifty witnesses and introducing hundreds of documents.

The court after evaluating this information from both parties found that appellees had in fact shown a particularized need for the material. The court acknowledged that while motions like this are generally not granted it felt that the facts of this case fell within the *Dennis* ruling. The factors the Supreme Court in *Dennis* had also found persuasive in supporting disclosure were the passage of time between when the events alleged occurred and when the testimony was to be given, and when the trial commenced; that much of the requested testimony which was critical to the Government's case consisted of testimony of key Government witnesses and accomplices and their testimony was largely uncorroborated. The Supreme Court there recognized and stated: "A conspiracy case carries with it the inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants." 384 U.S. at 873, 86 S.Ct. at 1851. In *Dennis* it appeared to be unfair to allow the Government to have access to the material while denying access to the defendant; that disclosure rather than suppression would promote the proper administration of justice; and because the grand jury investigation was completed the need for preserving the secrecy of the minutes had diminished.

The court in the case before us noted: "Here it has been a long long time since the events alleged in the indictment occurred. In this case the Defendants have brought civil actions attempting to speed the—either speed up the return of the indictment or to stop the ongoing investigation. The memories of witness-

es may have dimmed over the years and this—I think the grand jury, at least its [sic] alleged here and I suppose it's true that many different grand juries have looked at this thing."

Record Vol. II at 13. At the rehearing November 6 the court again reiterated that the instant case met the test of *Dennis:*

"And I knew when I made that statement of many times that in civil proceedings this particular Defendant had tried to get the case dismissed or the grand jury investigation stopped because it dragged out so terribly long and the Government—I denied those motions, but the Government still waited a year or two after all of that to return an Indictment."

Record Vol. III at 11.

The court here required that the material released to Evans be limited to only that which pertained to appellees. The court order did not give appellees access to material dealing with any other investigation. Significantly, the Government did not at either the October 16 or November 6 hearing or in its motion to reconsider filed October 23 mention that there was an ongoing investigation or any particular circumstance which required that the grand jury proceedings be kept secret.

On appeal the Government urges that the Jencks Act, 18 U.S.C. § 3500, prohibited the trial court from ordering the disclosure of grand jury material under Rule 6(e) of the Rules of Criminal Procedure. This issue was not raised in the trial court and we will not consider it here.

■ Deference should be shown to the trial court scheduling orders because of the ever present scheduling problems. As the Sixth Circuit noted in *United States v. Van Dyke,* 605 F.2d 220, 227 (6th Cir.): "A District Court has wide discretion in the scheduling of a trial which should not be disturbed in the absence of manifest abuse...." In the case before us the court in ordering the Government to turn over transcribed material within seven days of the October 16 hearing and the remaining material at least ten days before the

start of trial did so because it was also concerned with the need to schedule and with the Speedy Trial Act. The court of this said:

"... In other words we must set a trial within 40 days of today absent some of those findings or the clock will have run down and we'll have to dismiss the case. "In other words, we must commence this case by the 25th of November, according to the computations that I have."

Record Vol. II at 5. The court considered the order as a "matter of timing." Record Vol. III at 3. Obviously this was a matter for the court and not the United States Attorney. Considering that the Government intended to call at least fifty witnesses, and considering the length of time the Government had been working with the material, by allowing appellees the amount of time it did to review the transcripts, was not excessive. The court explained why it felt the material should be disclosed this far in advance of trial: "If you hand it to them in the trial, you know as well as I do that we are going to have to recess the trial a week." Record Vol. II at 22. It is clear from the record that the court did not abuse its discretion in setting the time table for the production of the grand jury testimony.

■ Just as the timing of discovery resides within the discretion of the court so does selecting the appropriate sanctions for the failure to comply with a discovery ruling. *United States v. Carrigan,* 804 F.2d 599 (10th Cir.). In *Carrigan* we relied for the authority of the district court to impose the sanctions on "its inherent power to control and supervise its own proceedings." 804 F.2d at 603. *See also United States v. Levine,* 700 F.2d 1176 (8th Cir.). In the instant case the Government expressly refused to comply with the order because it was concerned with having a "vehicle to appeal." Record Vol. III at 20. Upon the court's denial of the Government's motion to reconsider the order to disclose the grand jury record the Government responded:

"Now, I don't do this lightly, Your Honor, but I'm going to resist that order.

What I'm going to do is I'll notify you that the Government is not going to comply with that order and I'm going to ask you to impose sanctions—"

Record Vol. III at 18. The Government sought to dictate to the court the sanctions the court should impose. It suggested sanctions which sought to keep the information which it selected to itself before trial. The trial court characterized the suggested sanctions as an "exercise in futility" and we agree.

While the court does have discretion in selecting what sanctions are appropriate for a refusal to comply with a scheduling order this discretion is not without limit. While the Government's conduct in seeking to control the time schedule and to itself control the release of material cannot be condoned and despite the Government's request for sanctions the dismissal of the indictment was too drastic. When considering whether a dismissal in these circumstances is appropriate the factors stated in *United States v. Fields,* 592 F.2d 638, 647 (2d Cir.), should be applied. These are:

"The extreme sanction of dismissal of an indictment is justified in order to achieve one or both of two objectives: first, to eliminate prejudice to a defendant in a criminal prosecution; second, to 'help to translate the assurances of the United States Attorneys into consistent performances by their assistants.'" (Footnotes omitted.)

The footnotes in the above quotation refer to *United States v. Jacobs,* 531 F.2d 87 (2d Cir.), and *United States v. Estepa,* 471 F.2d 1132 (2d Cir.). *See also United States v. Jacobs,* 547 F.2d 772 (2d Cir.). These conditions or requirements in *Fields* are reasonable, in our view, for application to the particular circumstances before us. When this is done in the case before us we must hold the sanction of dismissal of the indictment is too extreme. On remand the trial court should consider other sanctions it deems appropriate in the event the prosecution does not carry out the orders of the court.

■ The Government also contends that the court erred in dismissing Count One of

the indictment on grounds that the statute of limitations had run. This count, as mentioned, charged appellees with bid rigging in violation of Section One of the Sherman Anti-Trust Act. The indictment charged Evans and unnamed coconspirators with agreeing to submit noncompetitive or rigged bids for the Noble County highway construction project. South Prairie Construction Company was awarded the contract. 18 U.S.C. § 3282 provides a five-year statute of limitations for criminal conspiracies to violate the Sherman Act. Appellees maintain that the statute began to run when the bids were let September 21, 1979. The indictment was returned April 21, 1986. The Government claims the statute did not run while payments were made to South Prairie on the contract by the state. South Prairie received payments until 1981. There appears to have been no division of these payments among the conspirators. The trial court found the count barred by the statute of limitations. The court in making its decision relied on the trial court's decision in *United States v. Northern Improvement Company*, 632 F.Supp. 1576 (D.N.D.). In that case several contractors were charged with a conspiracy to submit rigged bids. As in the instant case, the coconspirators agreed which company would be the successful bidder. Moreover, the contractors did not share any money once the contract was awarded. The trial court concluded that the last act triggering the running of the five-year statute of limitations was the submission of the rigged bids. The Eighth Circuit, however, reversed the trial court in *United States v. Northern Improvement Company*, 814 F.2d 540 (8th Cir.), finding that the statute did not begin to run until after the successful contractor accepted the last payment on the contract. It concluded that the Sherman Act violation was "accomplished both by the submission of noncompetitive bids *and* by the request for and receipt of payments at anti-competitive levels." 814 F.2d at 543 n. 2. (Emphasis in original.) Although appellees here did not

receive any money South Prairie did and that was sufficient to delay the start of the statute.

The district court's dismissal of Count One must be and is reversed and the imposition of the sanction of dismissal of the entire indictment must also be reversed.

REVERSED and REMANDED.