**F I L E D**

PUBLISH

**JUL 8 1997**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

In re:  GRAND JURY 95-1

No. 96-1543

---

Appeal from United States District Court
for the District of Colorado
(D.C. No. 95-Y-292)

---

Kenneth R. Scott, Assistant United States Attorney (Henry L. Solano, United States Attorney, William Lucero, Chief Appellate Division, and Linda Kato, Special Assistant United States Attorney, with him on the brief), Denver, Colorado, for the appellant.

Lee D. Foreman, of Haddon, Morgan & Foreman, P.C., Denver, Colorado, for the appellee.

---

Before BRISCOE, LOGAN, and LUCERO, Circuit Judges.

---

BRISCOE, Circuit Judge.

A grand jury was convened to investigate possible criminal violations in connection with mining operations conducted by Company X and its subsidiaries in southwestern Colorado.  While the grand jury proceedings were ongoing, the government filed a civil action against John Doe, a former officer of Company X, under the Comprehensive Environmental Response, Compensation and Liability Act.  Doe filed a

motion in the civil action seeking disqualification of the district judge because the same judge was presiding in the grand jury investigation and was allegedly privy to disparaging evidence concerning Doe. Doe simultaneously filed a motion in the grand jury proceedings for disclosure of materials. The district court granted the motion for disclosure and the United States appeals. We issued a stay of the district court's order of disclosure pending appeal on March 14, 1997, pursuant to a motion by the United States. We reverse the district court's order granting the motion for disclosure of grand jury materials.

### I.

Company X and its subsidiaries operated a gold and silver mine in southwestern Colorado from 1984 to December 1992. In December 1992, Company X and its subsidiaries filed for bankruptcy and abandoned operations at the mine. According to the government, the abandoned mine is now a Superfund site managed by the United States Bureau of Reclamation and the Environmental Protection Agency.

In 1995, a federal grand jury in Colorado began investigating possible criminal violations of federal environmental laws arising out of Company X's operation of the mine. To date, the investigation has resulted in indictments against Company Y, a subsidiary of Company X, and two senior managers of Company Y. Company Y has pled guilty to forty felony crimes, including conspiracy, violations of the Clean Water Act, and false statements, and has been fined $20 million. The investigation remains ongoing and

is focusing on former officers and employees of Company X and Company Y, including Doe. No criminal charges have been brought against Doe to date.

As part of the grand jury investigation, on September 27, 1995, the United States filed a sealed *Ex Parte In Camera* Motion for Judicial Approval to Issue Subpoena, seeking permission to issue a grand jury subpoena duces tecum to a Denver law firm that had served as outside counsel for Company Y during the time it was involved in the mining operations. In support of the motion, the United States argued the documents and information sought were not protected by any attorney-client privilege or work-product immunity because (1) many of the documents were business records, technical data, and communications with non-client third parties and were never subject to any privilege; (2) any privilege or immunity concerning otherwise confidential documents had been waived or otherwise extinguished by various conduct and statements; and (3) any other privilege or immunity had been overcome by the crime-fraud exception. To support its argument that the crime-fraud exception was applicable, the United States filed a sealed grand jury submission that included detailed statements of relevant portions of the grand jury investigation, including discussions of grand jury testimony and exhibits. Various grand jury materials, including transcripts, were attached to the submission.

On January 9, 1996, the United States filed a related motion asking the district court to hold in abeyance any determination concerning the alleged crime-fraud exception, and the court granted the motion on January 11. Although hearings were

subsequently held on the remaining portions of the United States' motion for judicial approval to issue subpoena, no ruling has yet been issued on that portion of the motion concerning the crime-fraud exception.

The United States, acting through the Justice Department's Environment and Natural Resources Division, filed a civil action against Doe on May 23, 1996, seeking to recover environmental clean-up costs associated with the mine. The action was randomly assigned by the clerk's office to Judge Edward Nottingham, the same judge who had previously been assigned to oversee the grand jury investigation. Doe filed his motion to disqualify Judge Nottingham on October 11, 1996, claiming disqualification was necessary under 28 U.S.C. § 455(a) and (b)(1) because the judge had (1) presided over ex parte applications by the government for prejudgment garnishment of Doe's property in the civil action, (2) supervised the grand jury that was investigating matters related to the mining operations and received ex parte submissions pertaining to the government's attempt to obtain files from the law firm that represented Company Y, (3) failed to insure that government counsel complied with notice requirements in actions commenced under the Federal Debt Collection Procedure Act, and (4) ignored local rules in assuming control over the civil action.

Doe also filed a motion in the grand jury proceedings on October 11, 1996, seeking "full access to all grand jury materials that relate in any way to grand jury investigations concerning the . . . [m]ine." Append. III at 1219. In support of his motion,

Doe asserted the United States had submitted various grand jury materials to the district court (in particular, its ex parte motion for approval to issue subpoena) and that, "[b]ecause both the Court and the [United States] in [the civil action] have had access to grand jury materials, it is appropriate that [he] also have such access." Id. at 1221. Doe further argued he would "be required to engage in discovery and disclosure in [the civil action] which [would] require access to all materials in the possession of the United States, including all grand jury materials." Id. at 1222. Notably, Doe's motion said nothing about the motion to disqualify Judge Nottingham and did not urge that access to the grand jury materials was necessary to fully address the motion to disqualify.

A hearing was held on October 29, 1996, on Doe's motion for access to grand jury materials. At the outset of the hearing and prior to Doe's counsel speaking on the record, Judge Nottingham stated: "I take the motion to be a motion that I need these materials, because there has been disparaging information and I need the disparaging information to support a motion to disqualify in the civil case." Id. at 1273-74. When Doe's counsel finally spoke, he stated, "I think as you've stated the proposition, that a big part of our request for access to the Grand Jury materials does in fact bear upon the pending motion [to disqualify]." Id. at 1276. However, Doe's counsel later stated: "I can't tell you that if you revealed the [grand jury] material to us in connection with the civil case, whether or not at this point that would support or go against the motion to disqualify. Depending upon the quality and tone of the material that you received, it either might support it or

might not support it.  I can't honestly tell you that I know the answer to that question."  Id.

at 1281.

Prior to ruling on Doe's motion for access, Judge Nottingham made the following

statements concerning his review of the grand jury materials submitted ex parte to him by

the government:

> And as I sit here today, I have, very frankly I have difficulty remembering disparaging things that I've heard about Mr. [Doe] except in the civil case.  I think that's where I picked up whatever disparaging material I think I remember about Mr. [Doe].  And when I say disparaging, I'm using that in the sense that it tends to put him in a bad light.  I think the material in the civil case tended to put him in a bad light, as I recall.  That is hardly surprising because that's the nature of advocacy.

Id. at 1301.  Ultimately, Judge Nottingham granted Doe's motion for access, stating:

> The motion for access to Grand Jury materials and Grand Jury file is granted in part.  And in making that determination, I'm guided by the Douglas Oil criteria.  Douglas Oil says, first of all, that Grand Jury materials may be disclosed if it is necessary to avoid injustice in another judicial proceeding.
> I do not see how any party in the civil proceeding involving the United States versus [John Doe] can litigate the motion to disqualify unless and until they know what the Grand Jury judge has seen and what has been furnished and what has gone on before the Grand Jury judge.
> Douglas Oil also says that the Court should consider the need for disclosure versus the need for secrecy.  What I have already said addresses the question of whether there is a need for disclosure.  I don't see how either side of the civil proceeding can intelligently litigate the motion to disqualify when the only people who know whether there has been "disparaging" information are the attorneys for the government in the Grand Jury case and the Court.
> And, you know, what is disparaging is in the eye of the beholder, and ultimately it will be a question in the civil case of whether the material furnished to the Court requires disqualification.  But both sides in the civil case are entitled to have the material and to make their case that either the material is disparaging or it is not disparaging.
>             * * *

But my point is nobody in the civil case can litigate the civil case with literally one hand tied behind their backs, and it's both sides, it's not just the defendant in the civil case that has that problem, it's the United States Attorneys who have that problem, [notwithstanding] the suggestion that there's been cross-fertilization here, as to which suggestion I make no finding.

So the order of the Court will be that the government will furnish any materials that have been furnished to the Grand Jury judge, and also the Court will order the clerk and the court reporter to make available transcripts of any proceedings involving the issue of the [law firm] subpoena.

Id. at 1307-09.

In response, government counsel asked Judge Nottingham to modify the order and allow the government to withdraw its crime-fraud submission (and thereby prevent Doe from gaining access to it). The judge initially indicated he had not received the crime-fraud submission, but upon further questioning by government counsel, he remembered receiving "a box of documents that accompanied [the government's motion] and that sat in [his] chambers for a period of time." Id. at 1314. Judge Nottingham further stated: "I looked at those documents. I can't remember what's in them, but I do remember looking at those documents." Id. Ultimately, the judge stated:

I can't tell you what's in those documents. I can't tell you that there's anything--that Mr. [Doe's] name is even mentioned in a single one of those documents, and I can't tell you I read them. I can tell you I looked through them in the way that one would look through something trying to get a flavor for what issue is being presented, and what the issues are likely to be.

So I will not limit the scope of my order. I think those materials have to be produced because they're things that I looked at and they are subject to the same showing of particularized need and the same findings that I made earlier with respect to the other materials.

Id. at 1316. Pursuant to the government's request, Judge Nottingham agreed to limit

-7-

disclosure of the materials to counsel of record in the civil action.

## II.

We have jurisdiction to hear the government's appeal because the district court's order of disclosure constitutes a final decision under 28 U.S.C. § 1291. State of Wisconsin v. Schaffer, 565 F.2d 961, 965 n.1 (7th Cir. 1977) (order denying petition, based on Fed. R. Crim. P. 6(e), which resolves all issues in case, is appealable as final decision of district court); see United States v. Miramontez, 995 F.2d 56, 59 n.4 (5th Cir. 1993) ("Orders granting or denying disclosure of grand jury materials for use in civil actions are appealable."); 15B Wright, Miller & Cooper, Federal Practice & Procedure § 3914.24, p. 181 (1992) (same).

The district court's order of disclosure was predicated on Fed. R. Crim. P. 6(e)(3)(C)(i), which provides that grand jury materials may be disclosed "when so directed by a court preliminarily to or in connection with a judicial proceeding." In reviewing an order of disclosure, we apply an abuse of discretion standard. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 397 (1959); In re Lynde, 922 F.2d 1448, 1451 (10th Cir. 1991).

The prerequisites for disclosure of grand jury materials are demanding. See Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222 (1979) (outlining standard for determining whether grand jury secrecy should be breached). Specifically, a party seeking grand jury materials must show (1) the materials are needed to avoid a possible

injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only material so needed.  Lynde, 922 F.2d at 1452; see also In re Eyecare Physicians of America, 100 F.3d 514, 518 (7th Cir. 1996).  Relevance alone is not sufficient; secrecy will not be broken absent a compelling necessity for the materials.  Eyecare, 100 F.3d at 518 (citing Hernly v. United States, 832 F.2d 980, 983-84 (7th Cir. 1987).  Further, the request must amount to more "'than a request for authorization to engage in a fishing expedition.'"  Id. (quoting Lucas v. Turner, 725 F.2d 1095, 1101 (7th Cir. 1984)).

We conclude Doe cannot satisfy either the first or the second prerequisite for access to the grand jury materials.  Therefore, we need not consider the third prerequisite, *i.e.*, narrow tailoring of the request.

### Does Doe need the grand jury materials to avoid possible injustice in the civil proceeding?

The district court concluded Doe needed the grand jury materials to avoid possible injustice in the civil action.  More specifically, the court concluded the materials were necessary for Doe to effectively argue his motion for disqualification.  The question here is whether the court abused its discretion in reaching that conclusion.

Doe's alleged need for the grand jury materials is general and vague.  As previously noted, Doe's motion seeking access to the materials did not even mention the pending motion for disqualification in the civil action as a basis for disclosure.  Only at the hearing on the motion seeking access, pursuant to prompting by Judge Nottingham,

did Doe's counsel indicate he was interested in obtaining the grand jury materials to support the motion for disqualification. Notably, however, Doe's counsel candidly acknowledged he did not know whether the materials would help or hurt the motion for disqualification. This acknowledgment clearly indicates the speculative nature of Doe's assertion that Judge Nottingham was privy to "disparaging" grand jury information and suggests Doe was simply interested in engaging in a fishing expedition. For these reasons alone, we believe Doe has failed to demonstrate a particularized need for the materials. See United States v. Rising, 867 F.2d 1255, 1260 (10th Cir. 1989) (general claim that disclosure of grand jury transcripts will possibly reveal exculpatory evidence not enough to demonstrate particularized need).

Even assuming Doe is sincere in his desire to obtain the grand jury materials to support his motion for disqualification, we further conclude disclosure of the materials is unnecessary to effectively argue that motion or to receive a fair ruling on that motion. Doe's motion for disqualification asserts that, as a result of reviewing ex parte submissions during the course of the grand jury proceeding, Judge Nottingham has acquired "personal knowledge" of disputed evidentiary facts in the civil action, 28 U.S.C. § 455(b)(1), and his continued participation in the civil action after acquiring the "personal knowledge" gives rise to an appearance of impropriety, 28 U.S.C. § 455(a). Neither ground presents a compelling case for disclosure of the materials actually reviewed by Judge Nottingham.

Title 28 U.S.C. § 455 provides in pertinent part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

In Doe's motion for disqualification, he relies on § 455(a), and only "the personal knowledge of disputed evidentiary facts concerning the proceeding" portion of § 455(b)(1). In support of his reliance on (b)(1), Doe specifically argues that while the court may have learned information pertaining to the civil action "in the courthouse or even in chambers," any knowledge obtained by the court "outside the instant case" is "extrajudicial and personal to the Court." Append. III at 1177.

In resolving Doe's argument that Judge Nottingham has "personal knowledge of disputed evidentiary facts" relevant to the civil action, the critical question will be whether the judge's review of the grand jury materials, in the course of performing his judicial duties in presiding over the grand jury proceedings, can result in "personal knowledge of disputed evidentiary facts" as that phrase is used in § 455(b)(1). In our view, this question can be decided as a matter of law without disclosure of the materials. Specifically, it is the context of Judge Nottingham's receipt of the information, not what the information actually conveys, that will determine whether the knowledge is "personal." In addressing this same provision of § 455(b)(1), this court has previously

-11-

held the "rule applies to knowledge which the judge obtained extrajudicially, *e.g.*, through prior representation of a party, or by witnessing the events at issue in the proceeding," and "does not apply to knowledge obtained in the course of related judicial proceedings."[1] United States v. Page, 828 F.2d 1476, 1481 (10th Cir.), cert. denied 484 U.S. 989 (1987). See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, 991 F.2d 1249, 1255 (7th Cir. 1993) (concluding "'[p]ersonal' knowledge of evidentiary facts means 'extrajudicial'"); United States v. State of Alabama, 828 F.2d 1532, 1544-46 (11th Cir. 1987) (district judge properly disqualified under § 455(b)(1) because activities as private lawyer and state senator prior to becoming judge gave him personal knowledge of disputed evidentiary facts of case), cert denied 487 U.S. 1210 (1988).

As for Doe's second basis for disqualification, *i.e.*, that Judge Nottingham's conduct has created the appearance of impropriety in violation of § 455(a), it is a closer question whether analysis of the materials actually reviewed is necessary to decide the issue. Section 455(a) expands the protection of § 455(b), but duplicates some of its protection as well. Liteky v. United States, 510 U.S. 540, 552 (1994). The standard for disqualification under § 455(a) is "'whether a reasonable person, knowing all the relevant

---

[1] Because the record on appeal suggests no impropriety on the part of Judge Nottingham in overseeing the grand jury proceedings, we find it unnecessary to determine if there are any exceptions to this general rule. See, e.g., In re Edgar, 93 F.3d 256, 259 (7th Cir. 1996).

facts, would harbor doubts about the judge's impartiality.'" David v. City and County of Denver, 101 F.3d 1344, 1350 (10th Cir. 1996) (quoting Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987)).  Although it can be argued the grand jury materials actually reviewed by the judge constitute "relevant facts" under this standard, it is also possible that Doe's argument could be rejected as a matter of law when the extrajudicial source factor is considered here.  See Liteky, 510 U.S. at 551 ("opinions held by judges as a result of what they learned in earlier [judicial] proceedings" are "not subject to deprecatory characterization as 'bias' or 'prejudice'" under § 455(a)).  Assuming, without deciding, that analysis of the materials is necessary to fully consider the § 455(a) argument, we conclude this can be accomplished by an *in camera* review by Judge Nottingham or a different district judge rather than through direct disclosure to Doe's counsel in the civil action.  See In re John Doe, 13 F.3d 633, 636 (2d Cir. 1994) ("where an *in camera* submission is the only way to resolve an issue without compromising a legitimate need to preserve the secrecy of the grand jury, it is an appropriate procedure").

### Does Doe's need for the grand jury materials exceed the interest in continued grand jury secrecy?

Several well-established policies underlie the secrecy accorded to matters before the grand jury, including:  preventing those persons who may be indicted from escaping; insuring that the grand jury enjoys unfettered freedom in its deliberations; preventing targets of the investigation from tampering with witnesses; encouraging witnesses to testify frankly and truthfully without fear of retaliation; and shielding those who are

exonerated by the grand jury.  <u>United States v. Procter & Gamble Co.</u>, 356 U.S. 677, 681-82 n.6 (1958).

Because Doe has failed to demonstrate a compelling need for disclosure of the documents, we conclude the interest in continued secrecy, supported by all of the above-listed policies, far outweighs Doe's alleged need for the materials.

The decision of the district court is REVERSED.  Doe's motion to dismiss the appeal for failure to provide a sufficient record is DENIED.