F I L E D
United States Court of Appeals
Tenth Circuit

APR 30 1998

PATRICK FISHER
Clerk

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

In re:

SPECIAL GRAND JURY 89-2

No. 98-1073

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 98-Y-16)**

Douglas N. Letter and Peter R. Maier, Civil Division, Appellate Staff, U.S. Department of Justice, Washington, D.C., for Plaintiff-Appellee United States of America.

Maria T. Vullo of Paul, Weiss, Rifkind, Wharton & Garrison, New York, New York, and Hartley David Alley, Wheat Ridge, Colorado, for Plaintiff James S. Stone.

Harold A. Haddon and Rachel A. Bellis of Haddon, Morgan & Foreman, P.C., Denver, Colorado, for Defendant-Appellant Rockwell International Corporation.

John M. Richilano of Richilano & Ridley, P.C., Denver, Colorado, for Intervenor-Appellant; David B. Harrison of Miller & Harrison, LLP, Boulder, Colorado, for Intervenor-Appellant; and David A. Lane of Miller, Lane, Killmer & Greisen, LLP, Denver, Colorado, for Intervenor-Appellant.

Forrest W. Lewis of Forrest W. Lewis, P.C., Denver, Colorado, for Intervenor-Appellant John Doe No. 1; Larry Pozner of Larry Pozner, P.C., Denver, Colorado, for Intervenor-Appellant John Doe No. 2; and Vincent J. Marella of Bird, Marella, Boxer, Wolpert & Matz, Los Angeles, California, for Intervenor-Appellant John Doe No. 3.

Brian K. Holland and Jeffrey S. Pagliuca of Holland, Kaplan & Pagliuca, P.C., Denver, Colorado, for Intervenors-Appellants.

Before **ANDERSON**, **BALDOCK** and **LUCERO**, Circuit Judges.

**PER CURIAM**.

This is an appeal from a district court order releasing, for use in a civil case, transcripts of the grand jury testimony of potentially all witnesses who testified before the grand jury, based on a showing of need for the testimony of only three witnesses.[1] We reverse the district court's decision, holding that: (1) a district court must evaluate the need for disclosure of grand jury testimony on a witness-by-witness basis; and (2) before releasing transcripts, the district court must conduct an in camera review in order to limit the disclosure to the claimed need and make appropriate redactions.

## BACKGROUND

United States ex rel. Stone v. Rockwell Int'l Corp., Dist. Ct. No. 89-CV-1154, the qui tam action in which litigants wish to use grand jury testimony, concerns defendant Rockwell International Corporation's operation of the Rocky Flats Nuclear Weapons Plant (Rocky Flats) near Golden, Colorado,

---

[1] Appellants filed their notice of appeal, then requested a stay pending appeal. After briefing and argument on the stay motion, and with the agreement of the parties, we proceed to resolve the merits of the appeal.

under contract with the United States Department of Energy from 1975 through 1989.  Plaintiff James S. Stone filed his complaint in July 1989, alleging that Rockwell violated the False Claims Act, see 31 U.S.C. § 3729, by concealing and misrepresenting its environmental and safety performance in submissions for payment.  See United States ex rel. Stone v. Rockwell Int'l Corp., 950 F. Supp. 1046, 1047 (D. Colo. 1996), aff'd, 124 F.3d 1194 (10th Cir. 1997), cert denied, 66 U.S.L.W. 3492 (U.S. Apr. 27, 1998) (No 97-1178).[2]  The Criminal Division of the Department of Justice had opened an investigation into similar allegations.  Special Grand Jury 89-2 was convened in August 1989, but before it completed the investigation, Rockwell entered a guilty plea to an information charging ten environmental crimes.  See id.  The grand jury was discharged in March 1992.  See In re Grand Jury Proceedings, Special Grand Jury 89-2, 813 F. Supp. 1451, 1456 (D. Colo. 1992).

_____

[2]    Stone, which dealt with the issue of government intervention in the qui tam action, provides factual background on the criminal matter.  There are other published cases discussing Rockwell's operation of Rocky Flats.  See Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1123 (10th Cir. 1994); Cook v. Rockwell Int'l Corp., 147 F.R.D. 237, 246-47 (D. Colo. 1993); Cook v. Rockwell Int'l Corp., 755 F. Supp. 1468, 1471-72 (D. Colo. 1991); In re Grand Jury Proceedings, Special Grand Jury 89-2, 813 F. Supp. 1451, 1455-56 (D. Colo. 1992).  Another related case, pending in the Court of Federal Claims, involves Rockwell's breach of contract claims and the government's False Claims Act counterclaims.  See Rockwell v. United States, Case No. 91-3162 (the Federal Claims court case).

In November 1996, the district court permitted the government to intervene in Stone's qui tam action.  See Stone, 950 F. Supp. at 1049.  A scheduling conference was held on December 5, 1997, at which discovery deadlines were imposed, the parties were limited to forty-five post-government intervention depositions, and trial was set to begin July 6, 1998.

Stone then filed this action to obtain access to grand jury testimony. He sought disclosure of the testimony of ninety-eight persons whom he believed were "knowledgeable" on subjects "at the heart" of the qui tam case.  Vullo Aff., Ex. 1 at 2.  Stone's primary claim was that release of the transcripts would prevent injustice in the qui tam action by providing a means to refresh witnesses' memories.[3]  He asserted that, at their depositions, key witnesses were having difficulty recalling details of important events.  See id. at 2-6.  The assertion was supported with excerpts from deposition transcripts showing that nine individuals

---

[3]      Another of Stone's claims was that the transcripts should be disclosed because Rockwell had one-sided access to grand jury proceedings, in that its counsel had debriefed numerous individuals after government interviews or grand jury appearances and summarized the sessions in memoranda protected by the attorney-client privilege.  Because the district court did not rely on this basis, we do not discuss it here.  We note that an adversary's prior possession of grand jury transcripts has been the explanation for disclosure in a number of cases.  See In re Grand Jury Proceedings GJ-76-4 & GJ-75-3, 800 F.2d 1293, 1302-04 (4th Cir. 1986); Illinois v. Sarbaugh, 552 F.2d 768, 776 (7th Cir. 1977).  The memoranda created by Rockwell's attorneys, however, cannot be equated with grand jury transcripts.

admitted varying degrees of memory loss in response to some questions.[4] Stone also submitted memoranda documenting earlier interviews of these individuals, reflecting a more detailed recollection at the time of the special grand jury investigation.

The disclosure matter was assigned to the trial judge in the qui tam action. On February 10, 1998, he heard argument in support of disclosure from counsel for Stone and a trial attorney from the civil division of the United States Department of Justice (DOJ). The DOJ civil attorney joined Stone's motion and added a contention that disclosure was necessary to test the credibility of witnesses, as exemplified by one individual's deposition statement that he wished to "recant" information in a debriefing memorandum. Appellants' Joint Mot. for Stay, Ex. B at 6-8. Rockwell argued against the motion, claiming that Stone was making a wholesale request for disclosure without the requisite showing of particularized need. However, Rockwell also requested disclosure of the testimony of individuals it wished to depose.

The district court did not ascertain how many individuals on the list of ninety-eight witnesses had actually testified before the grand jury and would be called for deposition or trial testimony under the limitations imposed in pre-trial

---

[4] The litigants in the qui tam matter have access to depositions taken in Cook, 755 F. Supp. 1468, and the Federal Claims court case. Many of the depositions accompanying the disclosure motion were taken in those two cases.

orders in the civil case. It was plain that the district court believed that a review of grand jury transcripts would require a major investment of time. On appeal, however, it became clear that the task was not nearly as onerous as the district court contemplated. In fact, the requested disclosure could be limited to as few as nine persons.

Based on the information submitted by Stone and the DOJ, the district court judge made his ruling. He found that the deposition excerpts established particularized need for the grand jury testimony of those specific persons, see id. at 19, and observed that he would "be very surprised if somebody had an accurate memory of something that happened ten years ago in the kind of detail that's going to be necessary for testimony at trial," id. at 20. He ordered disclosure of the grand jury testimony of all witnesses that any party in the qui tam action had deposed, intended to depose, or intended to call at trial. The transcripts were to be redacted so that the disclosure was limited to witness testimony on relevant issues. In addition, the court imposed a protective order so that the material could be used only for the purposes of the qui tam litigation.

The court's written order established disclosure and redaction procedures and formalized the protective order. The following steps were required for release of transcripts: (1) counsel for the parties were to provide to the United States Attorney lists of witnesses, prioritized in order of deposition date; (2) the

United States Attorney was to redact portions of grand jury transcript containing comment by the prosecutors or grand jurors, then provide to the parties' representatives one copy of the redacted transcripts; and (3) the parties' representatives were to review the redacted transcripts to excise portions of the transcript unrelated to the issues of pondcrete, saltcrete, spray irrigation, the sewage treatment plant, or the awards fee process to reach a "final redacted transcript" for use in the prosecution or defense of the qui tam action. Id.; Ex. C at 3-4.

Several persons moved to intervene and request reconsideration of the disclosure order. Intervenors John Does Nos. 1, 2, and 3 were targets of the grand jury investigation; other intervenors were Rockwell employees who had testified before the grand jury and will be deposed in the qui tam action. In opposing the motion for reconsideration, Stone provided excerpts from one intervenor's May 1995 deposition, showing some degree of memory loss.

At a hearing on the motion for reconsideration, held February 27, 1998, the court modified its previous ruling to allow witnesses to review their own transcripts. The court also stated that, later, it would work out a disclosure procedure for the grand jury testimony of trial witnesses.

Rockwell and the intervenors appealed the order to this court and requested a stay pending appeal. On March 2, we issued a temporary stay. The parties

provided expedited briefing on the stay motion and participated in a lengthy oral argument on April 1. At oral argument, the parties agreed that this court reviews the merits of the district court's order under the abuse of discretion standard, see In re Grand Jury 95-1, 118 F.3d 1433, 1437 (10th Cir. 1997), and conceded that they had no additional legal argument to place before this court. We now resolve the merits of this dispute.[5]

## DISCUSSION

The Supreme Court has consistently "recognized that the proper functioning of the grand jury system depends upon the secrecy of the grand jury proceedings." Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979). Secrecy, however, is not absolute. Rule 6(e) of the Federal Rules of Criminal Procedure provides exceptions to the general rule. Under Fed. R. Crim. P. 6(e)(3)(C)(i),

---

[5] Petitioners initially contested both the jurisdiction of this court and the respondents' standing to challenge the disclosure order. Neither of these issues requires extended discussion. We have held that a disclosure order is appealable as a final decision under 28 U.S.C. § 1291. See In re Grand Jury 95-1, 118 F.3d at 1436. At oral argument, petitioners essentially conceded that respondents have standing. See Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979) (conferring standing on persons who had been defendants in a criminal action and are now defendants in a civil suit to object to an order disclosing grand jury testimony of their employees); see also In re Lynde, 922 F.2d 1448, 1455-56 (10th Cir. 1991) (noting that when an objection has been filed by a party with standing, consideration of a second party's objection on substantially the same grounds, even if erroneous, is not prejudicial).

-8-

grand jury materials may be disclosed "when so directed by a court preliminarily to or in connection with a judicial proceeding."

A district court may properly order release of grand jury materials after a party demonstrates the necessity for them "with particularity." United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958). The determination involves balancing competing interests that differ from case-to-case:

> Specifically, a party seeking grand jury materials must show (1) the materials are needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only material so needed. Relevance alone is not sufficient; secrecy will not be broken absent a compelling necessity for the materials. Further, the request must amount to more than a request for authorization to engage in a fishing expedition.

In re Grand Jury 95-1, 118 F.3d at 1437 (citations and quotations omitted). The grand jury's supervisory court is "in the best position to determine the continuing need for grand jury secrecy." Douglas Oil, 441 U.S. at 226. The court in which the civil case is pending, however, has the expertise to consider need for the requested materials and to structure the disclosure. See id. at 229-30.

The discussion below addresses the three elements of the disclosure burden in isolation. It should be kept in mind that, as in any balancing test, the relevant factors are interrelated. Competing interests cannot be weighed without the identification of a recognizable need and an estimate of the interests in secrecy. "[A]s the considerations justifying secrecy become less relevant, a party asserting

-9-

a need for grand jury transcripts will have a lesser burden in showing justification" for releasing them. Douglas Oil, 441 U.S. at 223. Moreover, unless the need is demonstrated "with particularity," the court will have difficulty in lifting secrecy "discretely and limitedly." Id. at 221 (quotations omitted).

## A. PARTICULARIZED NEED

"The most significant" factor is the demonstration of "'a particular, not a general, need for the [grand jury] material.'" In re Lynde, 922 F.2d 1448, 1452 (10th Cir. 1991) (quoting United States v. Evans & Assocs. Constr. Co., 839 F.2d 656, 658 (10th Cir. 1988)). "Typically, cases of 'particularized need' arise when a litigant seeks disclosure of grand jury transcripts 'to impeach a witness, refresh his recollection, [or] test his credibility.'" Id. at 1454 (quoting Procter & Gamble, 356 U.S. at 683) (alterations in original). Thus, Stone and the DOJ have articulated valid reasons for disclosure and raised the question of whether their showing is sufficient to support the broad release ordered by the district court.

Almost uniformly, the federal courts have interpreted the requirement of particularized need literally, and rejected a blanket approach to the determination. Even in a "complex, long drawn out, and expensive" case, the Supreme Court disapproved of a general release of an entire grand jury transcript. Procter & Gamble, 356 U.S. at 683; see also Douglas Oil, 441 U.S. at 230 (advising that a

court might have waited until allegations of conflicts between grand jury statements and actions in criminal proceedings "ripened at depositions or even during testimony at trial"); In re Grand Jury Testimony, 832 F.2d 60, 63 (5th Cir. 1987) (requiring a party to "point to actual inconsistencies or inability to recall" in "a particular witness' testimony"); United States v. Fischbach & Moore, Inc., 776 F.2d 839, 845 (9th Cir. 1985) (same); Illinois v F.E. Moran, Inc., 740 F.2d 533, 540 (7th Cir. 1984) (reversing district court order releasing testimony without discharging "responsibility of deciding whether a strong showing of particularized need had been made").[6]

The common experience is that memories fade with the passage of time. However, "[a] mere statement that prior testimony will be less affected by loss of

---

[6] We are not persuaded by Stone's citations to Evans, 839 F.2d at 658-59 and Sarbaugh, 552 F.2d at 775. Evans is a criminal matter in which a panel of this court affirmed the district court's disclosure order premised on fading memories. The court specifically relied on Dennis v. United States, 384 U.S. 855, 870-71 (1966), which emphasized criminal justice considerations. We do not believe Evans can be read to permit a wholesale order of disclosure in a civil matter. See Allis-Chalmers Mfg. Co. v. City of Ft. Pierce, 323 F.2d 233, 237 (5th Cir. 1963) (significant differences between procedural requirements in civil and criminal cases make it unsafe to draw any analogy between the two in disclosure cases).

In Sarbaugh, a decision of the Seventh Circuit that preceded Douglas, the court granted the State's motion for a broad release of the testimony of former employees of the corporate defendant. That case turned, in large part, on the fact that the employer already had copies of the transcripts. See Sarbaugh, 552 F.2d at 775-77; see also United States v. White Ready-Mix Concrete Co., 509 F. Supp. 747, 749 (N.D. Ohio 1981).

memory simply does not establish that any particular witness's memory needs to be refreshed." Lucas v. Turner, 725 F.2d 1095, 1105 (7th Cir. 1984); cf. Wise v. Armontrout, 952 F.2d 221, 223-24 (8th Cir. 1991) (presumed memory loss due to the passage of time is not the equivalent of a particularized finding of prejudice attributable to delay in the filing of a habeas petition). Moreover, a claimed need to impeach, standing alone, does not provide a "scintilla of evidence in the record to indicate that [witnesses] are less willing to truthfully testify than they were at the time of their testimony before the grand jury." Lucas, 775 F.2d at 1105. The reality of the need can be shown by pointing to actual inability to recall relevant information or examples of inconsistent testimony on material issues. See In re Grand Jury Testimony, 832 F.2d at 63-64.

We cannot reconcile the sweep of the district court's ruling with established case law. Stone and the DOJ substantiated their disclosure request with evidence of passage of time, recalcitrance by one person, and memory loss of nine deponents, only two of whom had actually testified before the grand jury. The district court extrapolated from this showing and issued an order permitting any party to obtain the testimony of any witness. In effect, the showing of need for the testimony of three grand jury witnesses unsealed the testimony of potentially all witnesses.

The district court erred in generalizing a need for the testimony of all, based on a showing relevant to a small sample. We hold that the district court must conduct a witness-by-witness analysis under the particularized need standard. It must also provide the supporting facts and the reasons for its determination, so that we may conduct a meaningful review. See Fischbach & Moore, 776 F.2d at 845.

Here, the district court was in the best possible position to evaluate the alleged need for disclosure, in that it supervises the grand jury matter and presides over the qui tam action. See id. Moreover, it is apparent that the court used this expertise in finding memory loss or recalcitrance on the part of witnesses identified in written and oral submissions and in making a determination of particularized need for the testimony of these witnesses. To the extent that the court's determination of need applied to the identified witnesses, it is sustainable.[7] As to the remaining witness, we remand for findings of fact and conclusions of law on the need for grand jury testimony.[8]

---

[7] These individuals are identified in a sealed addendum to this order.

[8] In briefing the stay issue, the parties submitted documents that were not in the district court record, such as excerpts from depositions taken after entry of the district court's order, items produced in discovery, and attorney affidavits relating to whether plaintiffs have or have not utilized nonprotected information to refresh witnesses' memories. The additional materials are not properly before this court and have not been considered here. See Boone v. Carlsbad Bancorporation, Inc., 972 F.2d 1545, 1549 n.1 (10th Cir. 1992). The district

(continued...)

## B.    BALANCING NEED AND INTERESTS IN SECRECY

Once a party makes the required showing of particularized need, the court must weigh the particularized need against public interests "served by safeguarding the confidentiality of grand jury proceedings."  Douglas Oil, 441 U.S. at 219.  Where, as here, the criminal proceedings are concluded and the grand jury disbanded, the interests are "reduced," but not "eliminated."  Id. at 222.  The focus shifts from the "'immediate effects on a particular grand jury'" to "'the possible effect upon the functioning of future grand juries.'"  In re Lynde, 922 F.2d at 1454 (quoting Douglas Oil, 441 U.S. at 222) (emphasis deleted).  "'Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties.  Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties.'"  Id.

In this case, an additional factor contributes to the weight of secrecy interests.  The individual target defendants, John Does 1, 2, and 3, were investigated by the grand jury but not indicted.  See Douglas Oil, 441 U.S. at 219 n.10 (referring to the "'innocent accused'").  These defendants "have been subjected to charges before the grand jury which have thus far proven unfounded,

---

[8](...continued)
court, of course, may consider these documents in exercising its discretion on remand.

-14-

thereby increasing their interest in limiting disclosure of the grand jury proceedings." Fischbach & Moore, 776 F.2d at 844.[9]

In making its ruling, the district court did not explicitly enumerate or weigh the interests in continued secrecy. It did, however, name other appropriate policy concerns, such as the public interest in prosecuting the qui tam action. See In re Catfish Antitrust Litig., 164 F.R.D. 191, 194 (N.D. Miss. 1995) (taking into consideration the position of the United States on disclosure of documents). On remand, the district court should consider and evaluate the need for continued secrecy on the record.

## C.    STRUCTURE OF THE DISCLOSURE

"The disclosure order must be structured to cover only the material required in the interests of justice." United States v. Sobotka, 623 F.2d 764, 768 (2d Cir. 1980). Thus, under a particularized need standard, "[t]he balance struck between secrecy and the need for grand jury transcripts must result in the disclosure of

---

[9]    The John Does and other intervenors have complained of lack of notice and an opportunity to be heard in the district court. Fed. R. Crim. P. 6(e)(3)(D) requires notice to "(i) the attorney for the government, [and] (ii) the parties to the judicial proceeding if disclosure is sought in connection with such a proceeding." The court also has discretion to direct notice to any other person. Under the rule, the district court has considerable latitude to decide whether witnesses or other interested persons should be notified of the potential for disclosure.

information limited to the claimed need." In re Grand Jury Matter, 682 F.2d 61, 66 (3d Cir. 1982).

To prevent unnecessary disclosure, the district court must conduct an in camera review of the requested transcripts and determine what portions, if any, meet the claimed need. See Lucas, 725 F.2d at 1106. It is the court's obligation "to make an *in camera* examination of the pertinent portions of the grand jury transcript" and structure the order properly. Sobotka, 623 F.2d at 768.

> While we recognize the workload district court judges are faced with, this *in camera* procedure is necessary due to the paramount concern of all courts for the sanctity and secrecy of grand jury proceedings. In undertaking this inquiry the district court should not determine what is useful to the litigants but rather should focus on the question of whether particularized need has been shown for each item to be released. See Dennis [v. United States], 384 U.S. [855], 874-75 [(1966)].

Lucas, 725 F.2d at 1109.

In declining to review the transcripts, the district court abused its discretion. As a consequence, there was a potential for the release of a broad range of grand jury information without the requisite showing of need.[10] The

---

[10] We note that the district court was within its discretion in determining particularized need for the grand jury testimony of persons identified in submissions to that court. As to these individuals, named in the sealed addendum to this opinion, the district court, after further review, may designate appropriate portions of their grand jury testimony without further consideration of particularized need.

entry of a protective order restricting access to the transcripts does not cure this deficiency.

The procedure the district court devised for redacting and releasing the grand jury transcripts is equally troubling. Essentially, the court delegated the work to a committee made up of the parties' attorneys and the United States Attorney for the District of Colorado. As the Supreme Court has stated, it is the "judge's function" to "supervise the [production] process: for example, to cause the elimination of extraneous matter." Dennis, 384 U.S. at 875. Dennis may not be read as general permission to dispense protected materials to the litigating attorneys and rely on them to screen extraneous matter. The court may, in its discretion, seek input from attorneys during its in camera proceedings.

The court must review the transcripts in the first instance to determine particularized need and to confine disclosure to portions related to the need. As noted above, in considering particularized need, the court's task is limited to relevant information on material issues. Under these circumstances, the designation of extraneous material should not involve an excessive expenditure of court time or resources.

## CONCLUSION

The matter is REVERSED and REMANDED to the district court for further proceedings consistent with the principles outlined above.