FILED
United States Court of Appeals
Tenth Circuit

June 20, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

JERRY FREDDIE,

      Plaintiff-Appellant,

v.

MARTEN TRANSPORT, LTD.;
KAREN M. SCHILLER,

      Defendants-Appellees.

No. 10-2094
(D.C. No. 09-CV-00144-JEC-RLP)
(D. N.M.)

ORDER AND JUDGMENT[*]

Before **HARTZ**, **McKAY**, and **GORSUCH**, Circuit Judges.


Plaintiff Jerry Freddie appeals the district court's grant of Defendants

Marten Transport, LTD, and Karen Schiller's motion to dismiss for alleged

discovery abuses. The district court concluded Mr. Freddie withheld highly

relevant medical information about possible pre-existing conditions while

refusing to provide Defendants or the court with an adequate explanation or

excuse. Finding no abuse of the court's discretion, we affirm.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## BACKGROUND

Mr. Freddie filed this lawsuit against Defendants for injuries sustained in a November 29, 2006 automobile accident. He alleges injuries to his head, neck, and back; pain in his shoulders and extremities; and fatigue and sleep problems, amongst others. These injuries, he claims, resulted solely from this accident.

In discovery, Mr. Freddie initially refused to provide Defendants with details of pre-existing conditions or prior medical providers, and instead only stated that his health care was "largely provided" by "Indian Health Service." (Appellant's App. at 210.) He also claimed in his deposition he had never sustained a head injury other than in the 2006 accident at issue in this case. Defendants filed a motion to compel, in which they sought clarity about Mr. Freddie's prior accidents and injuries, pre-existing conditions, and medical providers. In response, Mr. Freddie supplemented his discovery to include a list of some, but not all, of his past medical providers and visited facilities. After the district court granted Defendants' motion, Mr. Freddie again supplemented his answers.

Some time after Mr. Freddie provided his second supplemental answers, Defendants obtained police and medical records that revealed Mr. Freddie had been involved in an undisclosed rollover accident in February 2003. Defendants also obtained a medical report from 2005 in which Mr. Freddie complained of chest pain, persistent neck pain, and headaches and "recall[ed] a time when he

had a fairly severe head and neck injury." (*Id.* at 162.)

Based on these two previously undisclosed incidents, Defendants filed a motion to dismiss. In response, Mr. Freddie denied any wrongdoing. He explained he was not the driver in the 2003 accident and the 2005 medical report referred to a neck injury he had sustained in the 1970s. Defendants then obtained and produced medical reports from 2003 for the court which revealed Mr. Freddie obtained chiropractic treatment for injuries he claimed were sustained in the 2003 accident. The reports described how Mr. Freddie hit his chest on the steering wheel and hit his head on the vehicle's headrest; and a list of his reported ailments included headaches, lightheadedness, fatigue, difficulty reading, and also pain in his neck, shoulders, back, and extremities.

The district court held two hearings on Defendants' motion. Mr. Freddie did not attend the first hearing, but his counsel suggested Mr. Freddie may have lied to the chiropractor and his insurance about his involvement in the 2003 rollover in order to use insurance benefits to pay for chiropractic treatments. After the hearing, counsel for Mr. Freddie further informed the court that "with respect to questions relating to statements he may have made to a chiropractor and other persons in 2003, it is likely [Mr. Freddie] will refuse to answer some questions on the grounds that he is protected from answering such questions under the Fifth Amendment to the United States Constitution." (*Id.* at 229.) At the second hearing, Mr. Freddie and his son testified it was the son, and not Mr.

Freddie, who was involved in the 2003 rollover. However, when asked about his previously undisclosed chiropractic treatments, Mr. Freddie invoked the Fifth Amendment. The court granted Defendants' motion, and this appeal followed.

**DISCUSSION**

We review the district court's imposition of discovery sanctions, whether under Rule 37 or the court's inherent authority, for abuse of discretion. *See Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1192 (10th Cir. 2009); *United States v. Evans & Assoc. Constr. Co.*, 839 F.2d 656, 660 (10th Cir. 1988). While discovery-related sanctions are generally permissible to protect the integrity of the judicial process, a sanction of dismissal is reserved for violations "predicated upon willfulness, bad faith, or some fault of [the party] rather than inability to comply." *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995) (internal brackets and quotation marks omitted). This circuit uses a framework of five factors, evaluated on the record, that should ordinarily be considered by a trial court before imposing a sanction of dismissal: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992). However, "these factors are not a rigid test, and . . . determining the correct sanction is a fact

specific inquiry that the district court is in the best position to make."
*Archibeque*, 70 F.3d at 1174 (internal quotation marks omitted).

Although the court assumed for purposes of Defendants' motion that Mr. Freddie was not involved in the 2003 accident, it nevertheless found that Mr. Freddie was culpable for willfully failing to disclose prior treatments for injuries similar to those alleged in this lawsuit despite having ample opportunity to do so. Specifically, the court compared Mr. Freddie's statements during discovery that he had no ongoing symptoms or injuries with Mr. Freddie's 2003 chiropractic treatment for symptoms remarkably similar to those injuries which Mr. Freddie now claims arose solely as a result of the 2006 accident. The court concluded that Mr. Freddie could not have merely forgotten his symptoms from 2003, nor could he claim without any supporting evidence that his pre-existing conditions had completely resolved by the 2006 accident.

Mr. Freddie asserts, contrary to the district court's understanding of the parties' discovery history, he did in fact disclose the chiropractic treatments to Defendants and authorized them to retrieve his records from the chiropractor's office. There is no evidence in the record to support this claim other than the unsupported assertions by Mr. Freddie's counsel that Mr. Freddie told Defendants he might have seen a chiropractor in a particular city but did not provide Defendants with a date, name, or any other identifying information.

Counsel for Mr. Freddie also suggests that Mr. Freddie failed to mention

-5-

the chiropractic treatments because either his frail mental state caused him to forget or because he knew of the treatments but did not want to risk liability for insurance fraud. Not only do these excuses appear to contradict each other, but the court may infer from Mr. Freddie's assertion of the Fifth Amendment that he possessed some degree of prior knowledge about his chiropractic visits.[1] We thus cannot say the district court abused its discretion by determining that Mr. Freddie willfully failed to disclose his prior chiropractic treatments to Defendants.

The district court also weighed the other *Ehrenhaus* factors in favor of dismissal. The court first determined that Mr. Freddie's omissions have and would continue to force Defendants to incur substantial expense of time and money to independently verify his discovery responses. The court further noted this prejudice could not be cured by excluding any tainted evidence. The court next found Mr. Freddie's inconsistent statements, when combined with his refusal to explain these inconsistencies, amounted to an unacceptable level of interference with the judicial process. The court also considered imposing a lesser sanction of costs and fees upon Mr. Freddie, but it ultimately decided that lesser sanctions would be ineffective because Defendants would remain burdened with unresolved conflicts at the expense of additional time and money and

---

[1] Although Mr. Freddie is free to assert the Fifth Amendment, the court may nonetheless draw adverse inferences against him. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

without any meaningful way to neutralize the prejudicial effect. Although the court did not expressly address whether it had previously warned Mr. Freddie that dismissal would be a likely sanction for non-compliance, it had in its order granting Defendants' motion to compel warned Mr. Freddie that "failure to comply with this Order may subject him to Rule 37 sanctions." (Supplemental App. to Appellees' Answer Br. at 18.) Moreover, "[o]nce a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth." *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1045 (10th Cir. 2005) (internal quotation marks omitted).

The district court did not abuse its discretion by concluding that dismissal was justified. The withholding of evidence "substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation." *Garcia v. Berkshire Life Ins. Co. of America*, 569 F.3d 1174, 1180 (10th Cir. 2009). Here, Defendants are "forced either to attempt independent corroboration of each submission, at substantial expense of time and money," or to accept the possibility that every document or statement submitted by Mr. Freddie is incomplete or inaccurate. *Id.* We have affirmed dismissals for lesser offenses, *see Ehrenhaus*, 964 F.2d at 919, and for similar offenses, *see Archibeque*, 70 F.3d at 1174. Because the facts in this case present discovery

violations within the range for which dismissal would be proper, we AFFIRM the district court's decision.

Entered for the Court


Monroe G. McKay
Circuit Judge